HARRIET J. MANAKER v. BARTON L. MANAKER
(5113)

DUPONT, C. J., BIELUCH and BERDON, Js.

Argued March 10—decision released July 28, 1987

*Wesley W. Horton,* with whom were *Alexandra Davis* and, on the brief, *Donald J. Cantor,* for the appellant-appellee (defendant).

*Cecily A. Isbell,* for the appellee-appellant (plaintiff).

BERDON, J. The defendant husband raises two issues in his appeal from the judgment dissolving the marriage between the parties. They are that the court erred (1) in admitting evidence of the financial resources of a third party who was living with the defendant, and (2) in requiring a standard of proof higher than a preponderance of the evidence in two instances. The plaintiff wife in her cross appeal claims the court erred in discharging her notice of lis pendens. We find no error in the defendant's appeal and error in the plaintiff's cross appeal.

The trial court in its memorandum of decision found the following facts. At the time of the dissolution of their twenty-three year marriage, the parties were both in their mid-forties. They have four children who are issue of the marriage, three of whom had reached their majority. Both parties contributed to the accumulation of the marital assets. The defendant husband is a successful businessman who owns and operates an automobile sales agency. The plaintiff, in addition to caring for the children and the home, did clerical work in the defendant's business and held other employment. She

entered law school in 1978, is now admitted to the bar and is employed on the legal staff of a Hartford based insurance company.

Around 1977, the relationship between the parties deteriorated and the defendant commenced an affair with a woman who lived in the neighborhood. In April of 1983, the defendant left the plaintiff and went to reside at the house of this woman (hereinafter housemate). The trial court, upon finding that the substantial cause of the breakdown of the marriage was the defendant's affair and cohabitation with the housemate, dissolved the marriage and entered financial orders.

I

The defendant's first claim of error relates to the trial court's admitting into evidence, over his objections, testimony pertaining to the income, assets and net worth of the housemate for the purpose of determining alimony, support and assignment of assets. Clearly, any future benefit the defendant may receive from the possibility of the housemate transferring assets to him is, at best, speculative and should not have been received into evidence for the purpose of assessing the defendant's future economic prospects. See *Rubin* v. *Rubin,* 204 Conn. 224, 229–30, 527 A.2d 1184 (1987); *Krause* v. *Krause,* 174 Conn. 361, 365, 387 A.2d 548 (1978).

The trial court, in its memorandum of decision, specifically stated that it would not consider the housemate's finances in assigning marital assets. The trial court did, however, hold that the evidence of the housemate's financial resources was relevant in determining the defendant's living expenses. It is within the trial court's discretion to consider this evidence for this purpose because the amount the housemate could contribute to their common household expenses was relevant in determining the defendant's current expenses and, therefore, his ability to pay periodic alimony and sup-

port. *McGuinness* v. *McGuinness,* 185 Conn. 7, 12–13, 440 A.2d 804 (1981). It was particularly relevant in this case because, during the years the defendant and housemate lived together, she shared her income with the defendant, all their common household expenses were paid from the housemate's checking account and she made large sums of money available to him. See *Rubin* v. *Rubin,* supra, 238–39.

Indeed, the defendant does not assign error because the trial court considered the evidence of the housemate's finances as a factor in determining the defendant's current expenses. Rather, the defendant claims that since this evidence was also erroneously admitted as a possible asset which may come into his possession, the subsequent evidential limitation by the trial court could not cure the error.

The defendant relies on *Kufferman* v. *Fairfield University,* 5 Conn. App. 118, 497 A.2d 77 (1985), which held that the posttrial exclusion of inadmissible evidence after its initial admission at trial required a new trial. *Kufferman,* however, must be held to its facts. In *Kufferman,* we pointed out that it was "difficult to say . . . whether the evidentiary defect might have been cured . . . or whether the . . . plaintiffs would have introduced other evidence if they had known that this evidence was to be excluded." (Citations omitted.) Id., 120–21. In the present case, however, the limitation on the use of the evidence of the housemate's finances by the trial court in its memorandum of decision was favorable to the defendant and the plaintiff does not complain.

Surely, a trial judge is able to disregard evidence erroneously admitted or only consider that evidence for the limited purposes for which it is admissible.[1] "We

---

[1] Of course, evidence inadmissible for one purpose may be admissible for another. *Guarnaccia* v. *Wiencenski,* 130 Conn. 20, 25, 31 A.2d 464 (1943); *Woodward* v. *Waterbury,* 113 Conn. 457, 464, 155 A. 825 (1931).

have repeatedly acknowledged, in cases tried to a jury, that curative instructions can overcome the erroneous effect of statements that a jury should not have heard. . . . It would be anomalous indeed to hold that an experienced trial court judge cannot similarly disregard evidence that has not properly been admitted." (Citations omitted.) *Ghiroli* v. *Ghiroli*, 184 Conn. 406, 408–409, 439 A.2d 1024 (1981).

Under the circumstances of this case, where the posttrial limitation of the use of the evidence did not prejudice the defendant and where we have no basis for discountenancing the trial court's report of the evidence it took into consideration in rendering its decision, it was not reversible error to limit the use of the evidence for its admissible purpose. There may, however, be "instances where it is so unclear what effect the disputed evidence might have had, or where its prejudicial effect is so overwhelming, that the fair administration of justice requires a new trial." Id., 409. This is not such a case.

## II

The defendant's remaining claims of error are that the court imposed a standard of proof higher than a preponderance of the evidence in two instances. First, the defendant claims the trial court erred in disallowing his claim that he owed the Internal Revenue Service $306,000 as a result of deductions which were taken for tax shelters and other matters on the tax returns of the parties for prior years. This claim of error centers around the trial court's use of the words "reasonable certainty" when it stated in its memorandum of decision that "[i]n this case the issue of tax liability has not been established with reasonable certainty."

In determining the financial orders the court must consider the liabilities of each party; General Statutes §§ 46b-81 and 46b-82; including those owed to the Inter-

nal Revenue Service. "The burden of persuasion in an ordinary civil case is met if the evidence induces a reasonable belief that it is more probable than not that the fact in issue is true. This is the common preponderance of the evidence standard." *Clark* v. *Drska,* 1 Conn. App. 481, 485–86, 473 A.2d 325 (1984). Surely, if the preponderance of the evidence standard is sufficient to satisfy the important issue of modification of custody; *Cookson* v. *Cookson,* 201 Conn. 229, 240, 514 A.2d 323 (1986); that standard also satisfies the degree of proof which is necessary for financial orders.

It is clear, however, that the trial court in its use of the phrase "reasonable certainty" had obvious reference to the probative value of evidence that the trier of fact must have available to determine whether it is more probable than not that the defendant would incur the tax liability. The defendant's accountant, the only witness on the issue of tax liability,[2] testified that in his opinion the defendant should pay to the Internal Revenue Service $306,000 by way of settlement. The trial court found in its memorandum of decision the following: "At most, the evidence was that there was a 'likely exposure' of $306,000. On cross-examination, the accounting witness was hesitant in his answers, giving the impression that he himself was not sure of his position . . . . All that can be concluded is that the defendant has a potential liability insofar as his income tax is concerned." What the trial court was saying is

[2] Evidence, although uncontradicted, need not be believed or accepted by the trier of fact. *Anderson* v. *Anderson,* 191 Conn. 46, 55, 463 A.2d 578 (1983). "The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984).

that the testimony of the witness was merely speculative and had not reached the necessary level of certainty for its acceptance. Thus, the trial court had reference to the weight to be attached to the evidence (that is, the probative value of the evidence) and not to the required quantum of proof (that is, preponderance of the evidence) which was necessary to support the defendant's claim. See *VonRavensberg* v. *Houck-Carrow Corporation,* 60 Or. App. 412, 653 P.2d 1297 (1982).

The defendant next argues that, when requiring him to account for those assets the plaintiff claimed he dissipated, the trial court imposed a standard of proof higher than a preponderance of the evidence. The party who has control over marital assets and is charged with their dissipation has the burden of accounting for those assets. *Vaiuso* v. *Vaiuso,* 2 Conn. App. 141, 146, 477 A.2d 678, cert. denied, 194 Conn. 807, 482 A.2d 712 (1984). This burden is met by a preponderance of the evidence. In this case, the defendant had the burden of accounting for $250,000 he received from the sale of an interest in a partnership and the trial court found he was unable to account for $61,878 of those assets.

The gravamen of the defendant's claim is that, since the trial court cited in its memorandum of decision the case of *In re Marriage of Smith,* 128 Ill. App. 3d 1017, 477 N.E.2d 1008 (1984), which held in part that "the person charged with this dissipation is under an obligation to establish by *clear and specific* evidence how the funds were spent (emphasis added)"; id., 1022; it again applied this erroneous standard. There are three short answers to this claim. First, the mere citation of the case does not indicate that the trial court adopted a higher standard of proof. The court was obviously citing the case for the proposition that the defendant in this case would have the burden of accounting for these assets. Second, it is obvious that the Illinois court in using the language of "clear and specific evidence"

had reference to the probative value of the evidence and not the quantum of the evidence which was necessary to sustain the burden of proof. This was made evident when the court went on to say immediately after making reference to "clear and specific evidence" the following: "*General* and *vague* statements that the funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation." (Emphasis added.) Id. Third, in the absence of any statement to the contrary by the trial court, as in the present case, it will be assumed that the preponderance of the evidence burden of proof was used. *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 297, 478 A.2d 257 (1984).

In both instances—proof of the defendant's potential tax liability and the accounting by the defendant for those assets which it is claimed had been dissipated—we are satisfied that the trial court applied the preponderance of the evidence standard of proof.

## III

The sole issue raised in the plaintiff's cross appeal is whether the trial court erred in discharging the plaintiff's notice of lis pendens on the ground that the copy of the lis pendens was served on the defendant before being recorded on the land records. Section 52-325 (c) of the General Statutes provides in part that the lis pendens shall not be valid to constitute constructive notice "unless the party recording such notice, not later than thirty days after such recording, serves a true and attested copy of the recorded notice of lis pendens upon the owner of record of the property affected thereby."

Since a lis pendens under § 52-325 is a creature of statute, the party who invokes its provisions must comply with the statutory requirements. *H & S Torrington Associates* v. *Lutz Engineering Co.*, 185 Conn. 549, 553, 441 A.2d 171 (1981). Nevertheless, the provisions

of the statute should be liberally construed to implement reasonably and fairly its remedial intent of giving notice of claims pertaining to the real property which is the subject of the litigation. See *Dorr-Oliver, Inc.* v. *Willett Associates,* 153 Conn. 588, 593, 219 A.2d 718 (1966) (garnishment statutes should be liberally construed).

In construing a statute, "[w]e need hardly say here that '[i]t is ancient [and yet enduring] wisdom that statutes should be interpreted so as to effectuate their manifested purpose or object.' 2A Sutherland, Statutory Construction (4th Ed. Sands) § 58.06, p. 474." *McGaffin* v. *Roberts,* 193 Conn. 393, 407, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). The obvious purpose of furnishing a copy of the notice of lis pendens upon the owner is to give him actual notice that one has been filed. Surely this purpose is satisfied if the server of the notice serves the defendant with a true and attested copy of the notice which will be recorded on the land records.

To require that it be recorded before it is served on the defendant is splitting hairs for which no purpose has been advanced. Taking into account the purpose of the legislative requirement and the "generous construction" which we must give the statute; see *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 597, 436 A.2d 271 (1980); service of a true and attested copy of that notice before filing it on the land records satisfies the requirements of § 52-325 (c) of the General Statutes.[3] Accordingly, we find error in the trial court's discharge of the lis pendens.

There is no error on the defendant's appeal. There is error on the plaintiff's cross appeal, the judgment

---

[3] By our ruling on this issue, we state no opinion on the validity of the lis pendens before the time it was actually recorded.

discharging the lis pendens is set aside and the case is remanded with direction to deny the defendant's motion to discharge.

In this opinion the other judges concurred.