649 A.2d 1137

Pamela H. JEFFCOAT

v.

James W. JEFFCOAT.

No. 6, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Nov. 30, 1994.

302

Michael Hart Davis (Shirley A. Lindsey and Bregel, Kerr, Davis & Dantes, on the brief), Towson, for appellant.

Julie Ellen Landau, Baltimore, for appellee.

Argued before ALPERT, FISCHER and MURPHY, JJ.

FISCHER, Judge.

Pamela H. Jeffcoat appeals from a judgment of the Circuit Court for Baltimore County arising out of divorce proceedings brought by her against James W. Jeffcoat, appellee.

In this appeal, appellant raises the following issues:

I. Did the court err by not including some of the value of marital property dissipated by appellee after separation and before trial in the value of marital property from which it could make a monetary award when appellee, immediately upon separation, removed virtually all of the parties' jointly titled liquid assets from their joint names to an account in his name alone and then over the next 13 months spent substantially all those funds?

II. Did the court err in finding that a portion of life insurance proceeds paid more than two years prior to trial were non-marital when: 1) there was no proof of a gift of the policy, 2) there was no allegation that the policy had any value at the time of the transfer, 3) the policy was maintained only by marital funds, 4) there was no tracing of the policy proceeds to any existing asset, 5) the proceeds of the policy were commingled with marital property when received two years before trial, and 6) the commingled proceeds were further commingled with other marital assets by appellee?

III. Is it contrary to the Family Law Statute to order the parties to pay work related day care expenses on the basis of their *pro rata* incomes after adjustment of their incomes for child support, and did the court err in not making a

finding regarding the parties' incomes when the amount of income was disputed?

IV. Did the trial court err by not properly calculating the monetary award using the three step process of (1) identifying marital property, (2) valuing marital property, and (3) granting a monetary award?

## Facts

The parties married in 1977, and two children were born of the marriage, James Richard, born in 1983, and Evan Cleave, born in 1989. Appellant insists the union was problematic from its outset. Appellee contends there were few stresses in the marriage until 1991, when appellee began law school. In 1991, appellee left the family home, apparently at appellant's suggestion. At a meeting on or about April 27, 1992, appellant informed appellee that she desired a divorce. Appellee responded by returning to live in the family home. Appellant's attorney threatened court action if appellee did not leave the family home and appellee complied.

During the course of the marriage, the parties were able to accumulate substantial assets. According to appellant, their net worth totalled $763,000 at the time of separation. Upon leaving, appellee withdrew joint funds totaling approximately $218,000 and placed them in his name alone. He also borrowed the maximum amount possible on their home equity line of credit, approximately $82,000. Appellee placed these funds in a bank account in his name. In addition to his control of the parties' joint funds, appellant avers that appellee had income from earnings and other sources totaling $88,000. Appellant alleges appellee spent almost $300,000 during the one year period of the parties' separation. According to appellant, appellee had spent all but approximately $68,000 of the joint funds by the trial date.

On October 23, 1979, appellee's father transferred the ownership of Metropolitan Life Insurance Policy # 716102822 PR on the father's life to appellee. When transferred, the policy was subject to a loan of $6,494. Appellee received $41,617.69

from Metropolitan Life upon his father's death in 1991. The proceeds from the insurance policy were placed in a joint checking account and, after the separation, in an account in appellee's name.

The trial court ruled that appellant could only receive one half of $17,000 in premiums paid on the policy during the course of the marriage. The remainder of the insurance policy was deemed by the trial court to be non-marital property of appellee. A monetary award of $29,473 was granted to appellant. Appellee was permitted to retain the proceeds of the insurance policy on appellee's deceased father as non-marital funds.

## I.

Appellant's contention that the court erred in failing to find that appellee dissipated marital funds rests primarily on an allegation that the trial judge used an incorrect standard in evaluating appellee's actions in spending marital monies. Appellant contends that the trial judge required that appellant prove fraud in order to show dissipation of assets had taken place. In *Sharp v. Sharp*, 58 Md.App. 386, 399, 473 A.2d 499 (1984), writing for this Court, Judge Alpert stated:

> [W]here a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights, see *Levin v. Levin*, 166 Md. 451, 453[, 171 A. 77] (1934).

This correct statement of the law was expressed slightly differently in *Ross v. Ross*, 90 Md.App. 176, 190, 600 A.2d 891, *vacated on other grounds*, 327 Md. 101, 607 A.2d 933 (1992), wherein we observed:

> When a court finds that property was dissipated to the point of being a fraud on marital rights, it should consider the dissipated property as extant to be valued with other existing marital property.

The quoted language in *Ross* apparently led the trial court in this case to say "I can't find in this case, based on the

evidence I have heard, that there was a use of marital funds such as would constitute a fraud on the marital rights of the parties, and, therefore, I grant the motion on the issue of dissipation of assets."

■ It appears the court believed it had to find fraud before it could find dissipation of marital funds. Fraud can only be found by clear and convincing evidence. *Aeropesca Ltd. v. Butler Aviation International, Inc.*, 44 Md.App. 610, 623, 411 A.2d 1055 (1980). The same quantum of proof, clear and convincing evidence, is necessary to establish constructive fraud. *Dixon v. Process Corp.*, 38 Md.App. 644, 657, 382 A.2d 893 (1978). The trial court's finding is understandable in view of the holding in *Ross, supra*, relied upon by the trial court. Upon reflection, however, we see no adequate reason to require a higher degree of proof to establish dissipation than any other aspect of marital property. Under a proper standard, the trial court should be able to find dissipation by a preponderance of the evidence.

The case at bar is a perfect illustration of the injustice that may result by imposing an unreasonable burden of proof on a party who accuses the other of dissipation of assets. The parties in this case over a period of less than fifteen years accumulated substantial assets; although both were employed, neither had a large income. In spite of the expense of raising two children, and even sending them to private schools, they had acquired a net worth of over $760,000. It is clear that they were able to accomplish this by hard work, frugality, and sound fiscal management. Notwithstanding this past record of sound fiscal management, in one year following the separation of the parties, appellee spent almost $300,000 of the parties' money. This should be sufficient to establish a prima facie case of dissipation.

Many state courts have considered dissipation of marital assets in determining the division of marital property. In *Sharp v. Sharp*, 58 Md.App. 386, 473 A.2d 499 (1984), this Court held that

where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards a consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights, *see Levin v. Levin,* 166 Md. 451, 453, 171 A. 77 (1934), and the chancellor should consider the dissipated property as extant marital property ... to be valued with other existing marital property.

*Sharp,* 58 Md.App. at 399, 473 A.2d 499. In its discussion of dissipation, the Court examined other jurisdictions that have addressed intentional dissipation of marital assets for the purpose of avoiding equitable distribution. Foremost is Illinois, which has statutory law expressly providing that a chancellor in dividing marital property should consider dissipation of assets. Ill.Ann.Stat. ch. 40, § 503(c)(1) (Smith–Hurd 1980 Vol., 1983–84 Cum.Supp.). This Court, in *Sharp,* 58 Md.App. at 401, 473 A.2d 499, cited *Klingberg v. Klingberg,* 68 Ill.App.3d 513, 25 Ill.Dec. 246, 250, 386 N.E.2d 517, 521 (1979), for the proposition that "[d]issipation may be found where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time where the marriage is undergoing an irreconcilable breakdown."

A number of states have statutes that specifically list dissipation of assets or fraudulent conveyances as a factor for the court to consider. Lawrence J. Golden, *Equitable Distribution of Property,* § 8.15 (1983, 1993 Cum.Supp.) (listing Arizona, Illinois, Indiana, Montana, and West Virginia).

Some states that have addressed dissipation of marital assets have followed Illinois law. Courts generally seem to adopt the Illinois Court's definition of dissipation. *See e.g., Monte v. Monte,* 212 N.J.Super. 557, 515 A.2d 1233 (Ct.App. Div.1986); *Clements v. Clements,* 10 Va.App. 580, 397 S.E.2d 257 (1990).

In *Melrod v. Melrod,* 83 Md.App. 180, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990), this Court held that there was no evidence suggesting that the husband had dissipated proceeds from a sale of a partnership in order to

deprive the wife of her marital rights. *Melrod*, 83 Md.App. at 194, 574 A.2d 1. This suggests that, to prove dissipation, the party claiming dissipation must present affirmative evidence. In *Rock v. Rock*, 86 Md.App. 598, 587 A.2d 1133 (1991), this Court placed the burden on the dissipating spouse. *Rock*, 86 Md.App. at 619–620, 587 A.2d 1133. Recently, in *Ross v. Ross*, 90 Md.App. 176, 190, 600 A.2d 891 (1992), this Court cited *Sharp* and held that "[t]he spouse alleging dissipation has the burden of proving dissipation and the value of such property."

Other courts disagree as to who bears the burden of proving the purpose of a conveyance. In some states, once the injured spouse makes a *prima facie* case that marital funds were spent once the marriage was breaking up, the burden shifts to the dissipating spouse to prove that the funds were spent for a proper purpose. Golden, at 375–376 (1993 Supp.). In *In re Marriage of Partyka*, 158 Ill.App.3d 545, 110 Ill.Dec. 499, 511 N.E.2d 676 (1987), the court held:

> Once it is established that one party has liquidated marital assets, the party charged with dissipation must establish by clear and specific evidence how the funds were spent; general and vague statements that they were spent on marital expenses or bills are inadequate to avoid a finding of dissipation.

*Partyka*, 110 Ill.Dec. at 503, 511 N.E.2d at 680 (*citing In re Marriage of Smith*, 128 Ill.App.3d 1017, 84 Ill.Dec. 242, 471 N.E.2d 1008 (1984)). In *In re Marriage of Smith*, 128 Ill. App.3d 1017, 84 Ill.Dec. 242, 471 N.E.2d 1008 (1984), the Illinois court examined many of its own opinions as well as the decisions of other jurisdictions, including *Barriger v. Barriger*, 514 S.W.2d 114 (Ky.1974), *Cooksey v. Cooksey*, 280 S.C. 347, 312 S.E.2d 581 (1984), and *E.E.C. v. E.J.C.*, 457 A.2d 688 (Del.1983), in order to determine that the burden of proof is on the party charged with the dissipation. More recently, the court noted:

> Once a *prima facie* case of dissipation is made, the party charged with dissipation must establish by clear and con-

vincing evidence how the funds were spent; general and vague statements are not enough.

*In re Marriage of Murphy*, 259 Ill.App.3d 336, 197 Ill.Dec. 671, 673, 631 N.E.2d 893, 895 (1994). Illinois appears to be the only state requiring the dissipating spouse to prove by clear and convincing evidence that the funds were used for a marital purpose. *See* Golden, at 384 (1993 Supp.).

Whereas in Illinois the dissipating spouse must prove by clear and convincing evidence that the property was not dissipated, other states require proof only by a preponderance of the evidence. In *Manaker v. Manaker*, 11 Conn.App. 653, 528 A.2d 1170 (1987), the Connecticut court held that the "party which has control over marital assets and is charged with their dissipation has the burden of accounting for those assets." The court continued, "This burden is met by a preponderance of the evidence." *Manaker*, 528 A.2d at 1173. The Connecticut court referred to *In re Marriage of Smith*, 128 Ill.App.3d 1017, 84 Ill.Dec. 242, 471 N.E.2d 1008 (1984), and opined that the Illinois court's use of the language of "clear and specific evidence" referred to "the probative value of evidence and not the quantum of the evidence which was necessary to sustain the burden of proof." *Manaker*, 528 A.2d at 1173.

The Court of Appeals of Virginia, in *Clements v. Clements*, 10 Va.App. 580, 397 S.E.2d 257 (1990), relied on Illinois law to define dissipation. Citing *In re Marriage of Smith*, 128 Ill.App.3d 1017, 84 Ill.Dec. 242, 471 N.E.2d 1008 (1984) and *Manaker v. Manaker*, 11 Conn.App. 653, 528 A.2d 1170 (1987), the court stated that once the aggrieved spouse shows marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with the dissipation to prove the money was spent for a proper purpose. *Clements*, 397 S.E.2d at 261. The court then held that the burden is on the dissipating spouse to prove by a preponderance of the evidence that the funds were used for some proper purpose. *Clements*, 397 S.E.2d at 261.

Although some courts refer to dissipation of marital assets as a fraudulent conveyance, they do not seem to require that

the injured spouse prove dissipation by an elevated standard. *See Monte v. Monte,* 212 N.J.Super. 557, 515 A.2d 1233 (1986) (citing *Sharp* and holding that intentional dissipation is no more than a fraud on marital rights); *Daniels v. Daniels,* 557 S.W.2d 702, 705 (Mo.App.1977) ("This court should look through his transparent maneuver just as courts have always disregarded fraudulent conveyances employed to hinder and delay creditors."); *Barriger v. Barriger,* 514 S.W.2d 114 (Ky. 1974).

A survey of case law does not support the argument that the injured spouse must prove the dissipation of assets by clear and convincing evidence. To analogize dissipation of assets to be a fraud on marital rights does not require a standard any higher than is used for any other aspect of marital property. In *Sharp,* the Court cited *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972). In *Colburn,* the Court held that the purpose of the husband's acts was to impoverish himself voluntarily "so as to fraudulently deprive his wife of her claim for alimony." *Colburn,* 15 Md.App. at 515–516, 292 A.2d 121. The *Sharp* Court then stated that, even though *Colburn* dealt with alimony, there was no reason why the same principles involving fraud and intentional dissipation could not be applied to the determination of a monetary award. *Sharp,* 58 Md.App. at 400, 473 A.2d 499.

■ The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation. *Choate v. Choate,* 97 Md.App. 347, 366, 629 A.2d 1304 (1993). That party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that monies have been dissipated, i.e. expended for the principal purpose of reducing the funds available for equitable distribution, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

■ It appears that appellant has established a prima facie showing of dissipation. The burden is now upon appellee to

produce evidence of the bona fides of his expenditures. Appellee's expenditures should be evaluated by the court to determine whether dissipation has taken place. The court must determine whether joint funds have been spent for other than family purposes with the intention of reducing the amount of money available to the court for equitable distribution. If the court finds that monies have been dissipated, the party responsible should bear the loss.

## II.

In 1979, Cyril Jeffcoat, appellee's father, assigned ownership of a life insurance policy on Cyril's life to appellee. Appellant contends that the proceeds of the policy are marital property because the transfer instruments indicate the policy was transferred "for value received." Appellee testified the policy was a gift from his father, and the trial court so found. We do not believe that the trial judge was clearly erroneous in reaching the conclusion that the policy was a gift and, therefore, non-marital property. When received, the policy was subject to a loan. This loan was repaid with marital funds, and the policy premiums were paid with marital funds. The court credited appellant with one-half of the approximately $17,000 in premiums paid and deemed that the remainder of the $41,617 received was the non-marital property of appellee. Upon receipt of the policy proceeds after Cyril's death, appellee placed the proceeds in a T. Rowe Price account along with other marital funds.

During the course of the separation, appellee took control of all of the liquid assets of the parties, approximately $200,000. He put those assets in T. Rowe Price accounts. It appears from the evidence that the proceeds of the insurance policy were commingled with marital funds of the parties. The trial court credited appellant with one-half of the premiums paid from marital funds, and permitted appellee to trace the remaining $41,617 in the T. Rowe Price account as non-marital funds of appellee. It appears to us that, in doing so, the court erred.

At the time the Rule S74 schedule was filed, there was $67,927 in T. Rowe Price account # 610099506–4. The court found that $41,617 of those funds were Cyril's life insurance proceeds. The fallacy in this approach is the assumption that appellee, after commingling the $41,617 along with substantial marital funds in a single account, spent only the marital funds. This is not possible. Since the marital and non-marital funds were commingled, it is impossible to trace $41,617 as non-marital funds. In May, 1992, the account into which appellee deposited the proceeds of insurance contained $262,113. At the time of trial, the account contained $67,927. In *Melrod v. Melrod,* 83 Md.App. 180, 187, 574 A.2d 1 (1990), Judge Bloom, writing for this Court, stated:

Property acquired by purchase during the marriage and not excluded by valid agreement between the parties, is marital property unless it can be traced directly to a nonmarital source of funds or property. FL § 8–201(e)(2)(iv) is quite specific; it excludes from marital property any property acquired during the marriage that is *directly traceable* to a non marital source. 'Directly traceable' is not synonymous with 'attributable.' Since Mr. Melrod commingled his income from non-marital sources with his marital income, no specific sum of money used to acquire property or reduce an indebtedness on any property can be directly traced to any source. This inability to trace property acquired during the marriage *directly* to a non-marital source simply means that all property so acquired was marital property. (Citation omitted. Emphasis in original.)

Because the insurance proceeds were commingled with marital funds in an account that at one time totalled $262,113, and the commingled funds were spent down to $67,927 at the time of trial, it is impossible to trace any of the remaining funds as non-marital.

### III.

The trial judge ordered appellee to pay child support of $300 per month for each child, a total of $600. Appellant

does not take issue with the $600 in child support ordered by the court. In a separate provision, the judge ordered the parties to divide, in proportion to their respective incomes, day care expenses and summer camp expenses. He defined income to include appellant's receipt of alimony and child support. Appellant objects because the trial court permitted appellee to deduct child support from his income and add the amount to appellant's income in determining each of their adjusted incomes. Appellant agrees that preexisting child support may be deducted, but contends that is not applicable in this case.

It appears that appellant is correct. The trial judge's method improperly determines the parties' income. Appellee's income is diminished while appellant's income is increased. This method of analysis alters to appellant's disadvantage the proportion that each must pay. In addition, this is contrary to Md.Code (1984, 1991 Repl.Vol., 1994 Cum. Supp.), § 12–204(a)(2)(ii) of the Family Law Article, which permits alimony payments, not child support, to be deducted from and credited to income.

In addition, appellant complains that the trial court improperly calculated appellee's income by failing to consider his bonus and the value of certain benefits. It is not clear to us whether the trial judge considered those aspects.

On remand, the trial judge should recompute the child support based upon the actual incomes of the parties, as found by the trial judge, and include in the amount of child support awarded an appropriate amount for day care and related expenses.

## IV.

Appellant avers that the trial court erred in fixing the monetary award in a number of areas. Appellant notes that the judge failed to utilize the three-step process in determining a monetary award as set forth in Md. Code (1984, 1991 Repl.Vol.), § 8–205 of the Family Law Article. As explained

in *Schweizer v. Schweizer*, 301 Md. 626, 629–630, 484 A.2d 267 (1984), the three-step process requires:

(1) [T]he court shall determine which property is marital property.... § 8–203(a).

(2) The court shall determine the value of all marital property. § 8–204.

(3) [Upon compliance with (1) and (2) ], the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The court shall determine the amount and the method of payment of a monetary award.... § 8–205(a).

Appellant contends that the trial judge, in making the monetary award, granted appellant an equal division in certain assets but, without explanation, overlooked other assets. For example, the judge disposed of $41,617 in insurance proceeds (previously discussed in section II) but ignored the $26,310 remaining in the account, effectively leaving it with appellee. Appellant also refers to a promissory note in appellee's name that the court failed to address. Appellant also contends that the disputed value of a Provident Savings Bank account # 2091364 was overlooked. Appellant claims the court did not address the dispute over furnishings located at 12 Jones Valley Circle, appellee's residence, valued at $5,000 by appellee and $10,000 by appellant. In addition, appellee referred in his testimony to "cash on hand" and cash in Maryland National Bank totalling $14,730, which the court failed to consider.

Appellee, on the other hand, insists that the equitable division does not need to be equal. Appellee maintains the trial judge followed the required steps.

It appears from our review of the record that the trial judge may have inadvertently overlooked certain assets. His failure to refer in any way to the items appellant claims were overlooked lends credence to appellant's assertion that these items, and perhaps others, were overlooked. Since this case is being remanded for the trial judge to reconsider the dissipation aspect, it is appropriate for the trial court to reaccomplish

the making of an appropriate monetary award taking into account all of the parties' marital property.

## V.

 Appellee has raised two issues in his brief for us to consider. Appellee asserts that the trial judge abused his discretion in awarding rehabilitative alimony to appellant. Appellee complains that the trial judge awarded appellant $1,000 per month in rehabilitative alimony in the absence of a showing that she has a need or intention to rehabilitate herself.

Appellee cites *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984) and *Hull v. Hull,* 83 Md.App. 218, 574 A.2d 20, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990). We do not believe the cases cited support appellee's position. In *Holston,* this Court reversed the chancellor who had ordered rehabilitative alimony. The *Holston* Court ordered that the chancellor grant indefinite alimony. In *Hull,* the chancellor had denied alimony and we affirmed, saying, "At the time of trial, therefore, the Wife had anticipated assets of $1,100,000. As her counsel conceded during the trial, she was self supporting.... We find no fault with Judge Heise's decision that alimony was not required in this case."

In the case at bar, the chancellor had before him a financial statement setting out appellant's monthly net income at $2,075 and monthly living expenses of $6,719. This was sufficient evidence to foreclose a holding on our part that the chancellor abused his discretion by awarding rehabilitative alimony to appellant.

## VI.

 Appellee's last objection is well taken. He states that the parties acquired EE bonds during their marriage, some titled in joint names and some in appellee's name alone. The trial judge ordered that the bonds be equally divided between the parties. Appellee objects because the court cannot trans-

fer ownership from one party to another. *Blake v. Blake,* 81 Md.App. 712, 569 A.2d 724 (1990).

Appellee states, and we agree, "the appropriate process would be to determine whether or not the property is marital and pursuant to Md.Code Ann., Fam.Law § 8–203, value the property. Then the court should consider the factors set forth in Md.Code Ann. Fam. Law § 8–205 as to whether or not a monetary award should be made to compensate one or the other party for any inequity resulting from a division of the EE bonds according to title." The question of the bonds should be considered along with the other items of marital property belonging to the parties.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.