684 A.2d 878

**Donald G. BECK**

**v.**

**Patricia A. BECK.**

**No. 133, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Nov. 7, 1996.

198

William M. Ferris (Krause & Ferris, on the brief), Annapolis, for Appellant.

Jerrold A. Thrope (Caroline G. Ellis, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, John G. Billmyre and Henry & Price, Easton, on the brief), for Appellee.

Argued before CATHELL, SALMON, and BISHOP (John J., Retired, specially assigned), JJ.

CATHELL, Judge.

On June 17, 1993, appellee, Patricia A. Beck, filed a Complaint for Limited Divorce in the Circuit Court for Talbot County (Horne, J., presiding). On July 6, 1993, appellant, Donald G. Beck, filed a counterclaim for absolute divorce. After a two-day trial, the trial court entered a judgment on June 7, 1995. The trial court granted appellant an absolute divorce on grounds of adultery and denied appellee's request for alimony. The trial court did grant appellee a monetary award of $384,000 and $30,000 in counsel fees. Both parties appeal from the judgment of the trial court.

Appellant/cross-appellee presents three issues for appeal:

1. May a trial court find that the value of certain marital property is greater than what the evidence supports and, thereby, arrive at a higher monetary award, in favor of one party, then the actual total value of marital property otherwise found by the trial court justifies, given the trial judge's reasoning?

2. Did the trial judge in the instant case abuse his discretion by prohibiting Appellant's counsel from introducing newly-discovered evidence at trial based on perceived discovery failures?

3. Where a self-supporting, adulterous party to a Maryland divorce is unable to prove a ground for divorce and unsuccessfully pursues claims for *pendente lite* and permanent alimony, may the trial judge award that party substantial counsel fees based on her unsuccessful pursuit of such alimony?

Appellee/cross-appellant presents two issues for review:

Did the trial court err in failing to include as extant marital property amounts Dr. Beck had gambled away or otherwise used to have a good time after the marriage had undergone an irreconcilable breakdown?

Did the trial court err in admitting parol testimony to contradict the clear language in a release that a mortgage had been paid during the marriage, thereby making the property partially marital?

We discuss each question presented by appellant and appellee individually. We shall relate the pertinent facts in the discussions below as necessary.

## I. APPELLANT'S QUESTIONS

### A. The Tortola Property

Before making its monetary award to appellee, the trial court determined which property was marital property and valued that property as required by § 8–205 of the Maryland Code, Family Law Article (1984, 1991 Repl.Vol., 1995 Supp.) (FL). The trial court determined that the total value of the marital property was $1,779,908. The court further found that appellee "should receive a monetary award which will result in her having the equivalent of 53% of the parties' marital property." The marital property included, among other assets, a residence located at Little Apple Bay, Tortola, British Virgin Islands (the Tortola property).

Appellant argues that the trial court erred in determining the amount of the monetary award to which appellee was entitled. More specifically, appellant argues that in determining the value of the Tortola property, the trial court based its valuation on information not entered into evidence. This overvaluation of the Tortola property in turn, appellant contends, caused the monetary award to be greater than it should have been.

In *Mayor of Rockville v. Walker*, 100 Md.App. 240, 640 A.2d 751, *cert. granted*, 336 Md. 354, 648 A.2d 464 (1994), we stated:

It is hornbook law, memorialized in Md.Rule 8–131(c), that "[w]hen an action has been tried without a jury, the appellate court ... will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of witnesses." This means that if, considering "the evidence produced at trial in a light most favorable to the prevailing party ...," there is evidence to support the trial court's determination, it will not be disturbed on appeal. Moreover, "[i]f there is any competent,

material evidence to support the factual findings below, we cannot hold those findings to be clearly erroneous."

*Id.* at 256, 640 A.2d 751 (citations omitted).

In making his determination as to the value of the Tortola property, Judge Horne was presented with numerous conflicting valuations. He ultimately valued the property at $312,500. Based upon our review of the record, this determination could have come from several sources: 1) the "Joint Statements of Marital and Non–Marital Property" required by Maryland Rule S74; 2) appellant's admission at trial that he had, during his deposition, testified that, in his opinion, the value was between $300,000 and $325,000; 3) appellant's S72 statement containing his admission of value of $300,000; or 4) all of the above.

### The S74 and S72 Statements

On February 2, 1995, appellant filed "Defendant's Proposed Joint Statement Of Parties Concerning Marital And Non–Marital Property Pursuant To Maryland Rule S–74." In this proposed statement, appellant valued the Tortola property at $312,500. The parties later filed a "Joint Statement Concerning Marital And Non–Marital Property Pursuant To Maryland Rule S–74" on April 7, 1995, wherein the parties valued the Tortola property at $312,500. As we shall indicate, appellant also filed an S72 Statement.

Appellee argues that in valuing the Tortola property, the trial court could rely on the S74 and S72 Statements despite the fact that they were never formally offered and received into evidence during the two-day trial. We agree and explain.

Maryland Rule S72, **"Pleading,"** provides, in subsection (f), that financial statements "shall be filed by the litigants in all actions in which alimony ... is claimed." Maryland Rule S74 requires that the parties file a joint statement, as to their property, its classification (marital, nonmarital, or hybrid thereof), and value as agreed upon by the parties. It also requires that the statement include any properties, the classification and value of which the parties cannot agree upon. As

to each of the relevant items covered by Rule S74, any dispute as to classification and value or both must be set out.

This required statement results from the procedure set out in subsection (d) of Rule S74, which provides the method whereby the final joint statement, including any disputes, is to be formulated and ultimately filed with the court.

Appellee filed her Plaintiff's Proposed S74 Statement on February 2, 1995. Thereafter, appellant filed Defendant's Proposed S74 Statement on February 9, 1995. In it, he agreed with appellee that the value of the Tortola property was $312,500. Therefore, as to each individual S74 Statement, an assertion as to value was made, and both parties agreed to the value of the property. These proposed statements, under the rule, were required to be filed in the case. A pleading entitled Parties Joint Statement Concerning Marital and Non-marital Property pursuant to Maryland Rule S74 was filed by both parties, as required, prior to trial. In that statement, although contending that the Tortola property was only partially marital (the wife contended that it was completely marital), appellant again agreed that its value was $312,500.

Additionally, on July 1, 1993, appellant filed the "pleading" required to be filed by Maryland Rule S72, his financial statement. The rule mandates that such statements when filed are a "part of the formal pleadings." In that statement, he valued the Tortola property at $300,000. Thereafter, on July 27, 1993, appellee filed her financial statement. In it, she valued the Tortola property at $275,000.

In *MCIC, Inc. v. Zenobia,* 86 Md.App. 456, 487, 587 A.2d 531 (1991), *rev'd in part on other grounds, Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), we noted that a trial judge had considered facts contained in a memorandum filed by the plaintiff in opposition to the defendant's motion for summary judgment:

[T]he Court of Appeals indicated that under Maryland law there is a *prima facie* presumption that an attorney has the authority to bind his client by his actions relating to the conduct of litigation. The Court noted that this was partic-

ularly the case where admissions were made in the course of trial. We believe the rule is properly extended to admissions made on behalf of a client in documents drafted and *filed in the ordinary course of litigation....* [W]e defined broadly an admission to include "the words or acts of a party opponent ... offered as evidence against him. Admissions *are considered to be substantive evidence of the facts admitted."*

. . . .

Because we regard the statements made in the Opposition as admissions ... and made on behalf of cross-appellants in the course of this litigation, the trial court properly considered this evidence.... [Empahsis added; citation omitted.]

We then discussed the contents of variously filed complaints and the adoption in them of other complaints and held "[u]nder Maryland law, party admissions in pleadings are considered to be substantive evidence of the facts admitted." *Id.* at 488, 587 A.2d 531.

In the case *sub judice,* the joint S74 Statements to the effect that the Tortola property was valued at $312,500 were not only filed in the regular course of the proceeding, they were required by rule to be filed. They were, therefore, admissions by the parties in a judicial proceeding. Additionally, the S72 Statements were required to be filed by Rule S72, which expressly defines such statements as "[p]leading[s]." In his S72 Statement, appellant valued the property at $300,-000. The trial court therefore had before it admissions by appellant that the Tortola property was valued at between $300,000 and $312,500.

We hold that the facts and averments as to the properties made in the statements required to be filed by Maryland Rules S72 and S74 constitute judicial admissions and may be considered as evidence without the necessity for the formal introduction at trial of these documents. That admissions by parties contained in such statements may be used as evidence is buttressed by the Rules Committee's proceedings relative to the passage of Rule S74.

In the Rules Committee's formal submission of proposed rule S74 to the Court of Appeals, the committee report's introductory statement provided, in part:

> Proposed Rule S74 emanates from a recommendation of the Conference of Circuit Judges. In divorce cases where the disposition of property or a monetary award based on marital property is at issue, the filing of a joint statement before trial, identifying all of the property at issue and the positions of the parties with respect to that property will greatly assist the court in understanding and resolving the disputes. The Committee found the need for such a requirement sufficiently pressing that it proposed a new Subtitle S Rule rather than await the comprehensive revision of that subtitle. The proposed Rule contains a procedure similar to the one prescribed for preparing a joint record extract, and incorporates the desired form in the body of the Rule. Finally, section e provides sanctions for failure to comply with the joint statement requirement generally similar to those available for noncompliance with discovery orders.

Ninety–Sixth Report of the Standing Committee on Rules of Practice and Procedure, 13 Md.Reg. 2305 (1986). It explained, similarly, in the "Explanatory Note":

> Proposed Rule S74 responds to concerns expressed by the conference of Circuit Judges in a letter of October 14, 1985. *Trial judges around the State routinely encountered litigants who were unprepared to present evidence as to the value of marital and non-marital property. In view of the mandate of Code Family Law Article, § 8–204 that "the court shall determine the value of all marital property", the conference felt that a summary statement filed in advance of trial would aid trial judges in deciding issues of the nature and value of property.* [Emphasis added.]

*Id.* at 2306. In the explanatory note, the committee commented on the stipulatory nature of the process:

> Although at least one Circuit had directed the filing of joint stipulations as to the nature and value of property, *no*

*specific procedure for arriving at these stipulations existed.*
The Committee has patterned the procedure in proposed
new Rule S74 after the procedure prescribed for filing a
joint record extract in Rule 1028 c 2. [Emphasis added.]
*Id.* The minutes of the meeting of the Rules Committee
where the recommendation of proposed Rule S74 was dis-
cussed, in part, indicate:

> With regard to exceptions, it was again pointed out that
> the exceptions come into play only if the joint statement
> fails to fairly reflect the position of the parties. *Ms. Ogle-*
> *tree stressed that the entire purpose of the procedure and*
> *the resulting statement, is to narrow the issues (relating to*
> *property) that are actually in dispute.* The Reporter noted
> that the "exceptions" process is one more step to insure that
> the information before the court is complete and accu-
> rate....
>
> ....
>
> ... Judge Wilner ... advised that presently, without
> such a procedure, there is an avalanche of undisputed
> matters wasting the court's time. *The proposed procedure,*
> *Judge Wilner continued, simply narrows the areas of dis-*
> *pute for the court.* The procedure has an additional benefit,
> he added, of promoting settlements. [Emphasis added.]

Court of Appeals Standing Committee on Rules of Practice
and Procedure, *Minutes of a Meeting of the Rules Committee*
*Held at Washington College, Chestertown* 30–32 (July 20–21,
1986). While the Court of Appeals, when it finally adopted the
rule in 1987, rearranged certain sections and added a source of
funds provision in respect to property that the parties agree is
nonmarital, it otherwise adopted the rule without substantive
change.

It is clear that the purpose of the rule was to provide for a
method by which, through the use of the admissions or
stipulations contained in the S74 Statements, the trial courts,
in the absence of other evidence, would, nevertheless, be able
to comply with the Family Law Article provision mandating
that the trial courts "shall determine the value of all marital

property." FL § 8–204. In the statement, the parties are required to agree as to the classification and valuation of property in which there is no dispute. The purpose of the rule was also to reduce the complexity of the property issues by reducing the disputes in respect to them through the generation of admissions and stipulations resulting from the procedures contained in the rule. These statements are, by rule, required to be produced in the course of litigation.

We reiterate that the admissions and stipulations contained in Maryland Rule S72 and S74 Statements, when filed in a case as required, may be considered as evidence by trial courts without the necessity of a formal introduction of such statements at trial.

In the case *sub judice*, the admissions or stipulations of appellant's S72 and S74 Statements were properly before the trial court. They contained admissions of value of the Tortola property ranging from $300,000 to $312,500. Judge Horne found the value of the property to be $312,500. He did not err.

### B. The Marital Home

The marital home, known as Ryder's Rest, was jointly owned by the parties and was valued at $450,000. The lot was purchased by the parties during the course of the marriage for $68,500 in 1983.

At trial, appellee's counsel asked appellant "whether he could identify the source of the funds used to purchase [the Ryder's Rest] lot." Appellant answered, "I believe I can at this point." Appellee's counsel then tried to impeach appellant with statements made in his previous deposition testimony.

On further examination by appellant's counsel, "[a]ppellant's lawyer attempted to introduce an exhibit that consisted of certain documents that reflected the source of those funds." Appellee's counsel objected on the basis that the document "was not produced to [appellee] during the course of discovery." The trial court, declining to receive the exhibit, stated:

[I]t would appear that the [appellant] has failed to obey the order compelling discovery, and the Court, pursuant to Rule 2–433(b), will enter such order in regard to the failure as the Court feels is just, including one or more of the orders set forth in Section (a), and the Section 2–433—Rule 2–433, Section (a), Subsection (2); the Court will order that the [appellant] not be allowed to support or oppose claims with the materials, the use of the materials that he failed to provide to counsel for the [appellee] in accordance with the order of the Court compelling the production of these materials.

It is clear, under Maryland Rule 2–433(a)–(b), that the trial court may, when one of the parties violates an order compelling discovery, "prohibit[ ] that party from introducing designated matters in evidence." Md. Rule 2–433(a)(2); *see also Bartholomee v. Casey,* 103 Md.App. 34, 48, 651 A.2d 908 (1994), *cert. denied,* 338 Md. 557, 659 A.2d 1293 (1995). It is especially crucial for the trial court to exclude such evidence "[o]n the eve of trial ... [where] 'the injury inherent in failure to make discovery is unfair surprise.'" *Bartholomee,* 103 Md.App. at 48, 651 A.2d 908 (quoting John A. Lynch, Jr. & Richard W. Bourne, *Modern Maryland Civil Procedure,* § 7.8(c), at 597 (1993)).

Appellant argues that the trial court abused its discretion by excluding all evidence that "tended to prove that ... over $60,000.00 in his non-marital property was directly traceable to the parties' Ryder's Rest realty." Appellant further argues, "In the instant case, there was no evidence that Appellant's failure to provide the exhibit in question to the Appellee's trial counsel sooner than the first day of trial was willful and contumacious."

 "Maryland law is well settled that a trial court has broad discretion to fashion a remedy based on a party's failure to abide by the rules of discovery." *Bartholomee,* 103 Md. App. at 48, 651 A.2d 908. Appellant has not cited, nor have we found, any Maryland case holding that a trial court's exclusion of evidence based on a discovery violation, of the

nature of that in the case at bar, constituted an abuse of discretion.[1] Likewise, "the power of the trial court to impose sanctions [for discovery abuses] is not limited by the requirement that they find willful or contumacious behavior." *Lakewood Eng'g & Mfg. Co. v. Quinn,* 91 Md.App. 375, 383, 604 A.2d 535, *cert. denied,* 327 Md. 524, 610 A.2d 797 (1992).

In the recent, procedurally complex, garnishment case of *North River Ins. Co. v. Mayor of Baltimore,* 343 Md. 34, 47, 680 A.2d 480 (1996), the Court of Appeals, reversing a trial court's imposition of a default sanction, initially stated the standard of review:

> We fully recognize that ruling on discovery disputes, determining whether sanctions should be imposed, and if so, determining what sanction is appropriate, involve a very broad discretion that is to be exercised by the trial courts. Their determinations will be disturbed on appellate review only if there is an abuse of discretion.

That case, however, is clearly distinguishable in that the Court of Appeals in *North River* noted that the "facts the trial court considered to be material were based on clearly erroneous findings." *Id.* at 62, 680 A.2d 480. It also determined that the discovery materials being sought in *North River* were "only contingently and marginally relevant," *id.* at 66, 680 A.2d 480, and that the objection to the magnitude of the search had not received the attention that it should have received. The Court commented further that the discovery orders were unlimited in scope and that no limits had been placed on the overbroad discovery requests. The Court also noted that, as to some of the discovery, an order to compel had not been rendered and, therefore, in the absence of such

---

1. We note a different analysis is applicable when the trial court allows a party to introduce evidence even though that party is in violation of a discovery order. In such a case, the trial court does not abuse its discretion by admitting the evidence unless there is prejudice to the opposing party. *See Bartholomee,* 103 Md.App. at 49, 651 A.2d 908; *Swann v. Prudential Ins. Co. of Am.,* 95 Md.App. 365, 382, 620 A.2d 989 (1993), *rev'd on other grounds sub nom., Dover Elevator Co. v. Swann,* 334 Md. 231, 638 A.2d 762 (1994); *Snyder v. Snyder,* 79 Md.App. 448, 461, 558 A.2d 412, *cert. denied,* 317 Md. 511, 564 A.2d 1182 (1989).

an order, "the court could not utilize garnishees' answers to the third round of discovery as a basis for sanctions." *Id.* at 79, 680 A.2d 480.

In the case *sub judice,* an order to compel had been entered and the matter sought related to the source of funds theory applicable in the case. This information was therefore relevant. The discovery requests were not overbroad and no limitation had, apparently, been requested. The facts causing the Court of Appeals to reverse the trial court's imposition of a default sanction in *North River* are not present here. We conclude, therefore, that the exclusion of appellant's documentary evidence was not an abuse of discretion.

As a result of appellant's own failure to comply with an order compelling him to produce such evidence, he was sanctioned in such a fashion that admission of that evidence was denied. Accordingly, there was no evidence before the trial court supporting appellant's "source of funds" argument. In the absence of such evidence, jointly-owned property acquired during the marriage is considered to be marital property. Judge Horne's decision was correct.

### C. Counsel Fees

The trial court, citing section 11–110 of the Family Law Article, granted appellee $30,000 in attorneys' fees. The trial court reasoned:

> In this case the court has considered the financial resources and financial needs of both parties with respect to the monetary award, alimony and counsel fees as they all relate to each other. It has been the finding of this court that a monetary award in the amount of $384,000 should be made to Mrs. Beck. Because of the relative financial positions of the parties once the judgment resulting from this monetary award is paid the court did not feel that alimony was appropriate. The court does feel that Mrs. Beck should have some of her counsel fees paid by Dr. Beck in order to maintain the relative financial position of the parties and because of the obvious necessity of prosecuting this action for alimony. The fact that the court chose to award Mrs.

Beck a monetary award and, after consideration of the income to be generated from that award and the relative positions of the parties, chose not to award alimony to Mrs. Beck does not in any way diminish the necessity of her incurring counsel fees in an attempt to obtain alimony. The court also notes that counsel for Mrs. Beck had to overcome continued resistance to discovery on the part of counsel for Dr. Beck.

■ A trial court, before granting attorneys' fees in an alimony proceeding, must consider 1) "the financial resources and financial needs of both parties" and 2) "whether there was substantial justification for prosecuting or defending the proceeding." FL § 11–110(c). From the above excerpt, it is clear that the trial court considered the financial resources and financial needs of both parties. We "presume that the trial judge knows the law," *Reuter v. Reuter,* 102 Md.App. 212, 244, 649 A.2d 24 (1994), and in the case at bar, the trial court tells us so by stating that it was awarding counsel fees "because of the obvious necessity of prosecuting this action for alimony...." The substance of the trial court's opinion is that it found that there was substantial justification for litigating the alimony claim, but because the court was making a monetary award, it believed alimony was no longer necessary. A trial court does not have to recite any "magical" words so long as its opinion, however phrased, does that which the statute requires. Judge Horne's opinion satisfied the requirements of the statute, even in the absence of the words "substantial justification."

■ Appellant presents numerous arguments in support of his contention that attorneys' fees were improperly awarded because appellee did not have substantial justification for prosecuting her claim for alimony. Appellant first argues that it is, or should be, self-evident that a party who pursues a claim for alimony and fails to prove that such an award is justified did not have "substantial justification for prosecuting ... the proceedings." In *Blake v. Blake,* 81 Md.App. 712, 730, [569 A.2d 724] (1990), this Honorable Court ob-

served that, there, the fact that the appellee received an "award of indefinite alimony patently illustrate[d] the justification of" the appellee in pressing her alimony claim. Clearly, the converse must also be true: the denial of a party's request for alimony "patently illustrates" that said party did not have the "substantial justification" for pursuing such a claim that § 11–110 of the Family Law Article requires.

Appellant's argument is incorrect. In *Doser v. Doser,* 106 Md.App. 329, 664 A.2d 453 (1995), we examined a wife's claim that the trial court erred in failing to grant her her full attorneys' fees. Finding that the trial court did not abuse its discretion, we stated:

> Given that the court granted alimony, it follows that Ms. Doser was justified in prosecuting her alimony claim. Moreover, "justification," for the purposes of FL § 11–110(c)(2), is not equivalent to "success;" even if Ms. Doser did not receive the alimony she requested, her loss would not preclude an award of counsel fees.

*Id.* at 359, 664 A.2d 453. The fact that appellee, in the case *sub judice,* was unsuccessful in her alimony claim does not illustrate that appellee did not have substantial justification for prosecuting the claim for alimony.

■ Appellant also argues that appellee did not have substantial justification for prosecuting her alimony claim because the trial court "erroneously thought that, at the time of his judgment, the [a]ppellee could in good faith allege a ground for divorce on the basis of two years of separation." Like appellant's first argument, this argument fails due to his inaccurate view of substantial justification. Appellant's view of substantial justification is *ex post* and not *ex ante.* In other words, appellant looked to the conclusion of the litigation to determine whether substantial justification existed and therefore whether attorneys' fees were properly granted. Viewing substantial justification from this vantage point is generally incorrect. We determine, for purposes of section 11–110, whether substantial justification existed at the time the com-

plaint was filed. *Cf. Inlet Associates v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 282, 596 A.2d 1049 (1991) (stating that in determining whether substantial justification exists when attorneys' fees are granted pursuant to Maryland Rule 1–341, "[t]he reasonableness of the legal position must be assessed at the point when the complaint is filed, not from the vantage point of hindsight"). In her Complaint, appellee stated:

> Although [appellee] and [appellant] are living under the same roof, they are not cohabitating, nor are they living as man and wife because of [appellant's] cruel treatment which is inconsistent with the health, safety and self-respect of [appellee]. . . .
>
> . . . .
>
> . . . [Appellee] seeks the following relief: . . . [t]hat [she] be granted a limited divorce from the [appellant]. . . .

Appellant does not argue that this claim for limited divorce was without "substantial justification." Although the trial court did not grant appellee either an absolute or limited divorce, the court stated that "either party may have had cause for a divorce on grounds of desertion or constructive desertion at one time or another during the course of the marriage." Based on the trial court's findings, there was, at a minimum, a factual dispute as to whether appellee had a claim for limited divorce and therefore substantial justification for prosecuting her alimony claim. *See* FL § 11–101(a) (stating "[t]he court may award alimony . . . as a part of a decree that grants . . . a limited divorce").

■ Appellant finally asserts that even if there was substantial justification for prosecuting a suit for alimony, the trial court erred because "[b]efore the trial judge could make such an award, the law required there to be proof of which fees were incurred in pursuit of her alimony claim." We discussed a similar issue in *Goldberg v. Goldberg*, 96 Md.App. 771, 626 A.2d 1062, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993). In that case, the wife was awarded $40,000 in attorneys' fees and $45,890 in expert fees pursuant to section 11–110 of the Family Law Article. The husband "assert[ed] that

these fees were 'apparently' awarded for work done to obtain the monetary award and there [was] 'no statutory authority for fees and costs in connection with the proceedings for a monetary award.'" *Id.* at 790, 626 A.2d 1062. We held that the trial court's award of attorneys' fees was proper in light of its finding that the wife had substantial justification for prosecuting the action and its examination of the financial resources and financial needs of both parties. In the case *sub judice*, Judge Horne examined the financial needs and financial resources of both parties and also found, as have we, that appellee had substantial justification for prosecuting her alimony claim. As Judge Horne correctly examined these two requirements of section 11–110 and considered evidence regarding attorneys' fees, he did not err in awarding these fees.

## II. APPELLEE'S QUESTIONS

### A. Dissipation Claims

At trial, appellee alleged that appellant dissipated three marital assets: 1) a $100,000 certificate of deposit; 2) an $11,924 savings account; and 3) $15,064 in proceeds from the liquidation of appellant's life insurance policies. Although appellant "admit[ted] converting these assets into cash and ... utilizing an unknown amount of this cash to finance gambling trips to Atlantic City," Dr. Beck also testified that "some of this money was used to pay the $6,000 private investigator fee, to pay for college tuition for the youngest of the Beck children, and for other day to day living expenses."

The court, finding that there was no dissipation of these three assets, stated:

> Dr. Beck admits converting these assets into cash and to utilizing an unknown amount of this cash to finance gambling trips to Atlantic City. It is undisputed that these funds no longer exist. The question is: did Dr. Beck "use marital property for his own benefit for a purpose unrelated to the marriage at a time [when] the marriage [was] undergoing an irreconcilable breakdown?" *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 308 [649 A.2d 1137] (1994) (quoting and

apparently approving the Illinois definition of dissipation, although not the Illinois burden of proof rules). Dr. Beck testified that some of this money was used to pay the $6,000 private investigator fee, to pay for college tuition for the youngest of the Beck children, and for other day to day living expenses.

The court does not find, based upon the testimony presented, that Dr. Beck dissipated these three assets.... It is impossible for the court to say what amounts, if any, were not used for actual, reasonable living expenses, whether we are speaking of the $126,988 used by Dr. Beck or the $91,762 used by Mrs. Beck. Therefore, the court finds no dissipation.

The court notes that the Becks' standard of living was high. Neither realistically expected the other to account for and justify every expense.

■ We recently discussed dissipation of marital property and the allocation of the burden of proof associated with a dissipation claim in *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 649 A.2d 1137 (1994). There, we stated: "after [the] party [who claims dissipation of marital assets] establishes a prima facie case that monies have been dissipated, ... the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate." *Id.* at 311, 649 A.2d 1137. Appellant testified that, although some of the funds may have been used for gambling, substantial portions of them had gone for other uses, tuition, living expenses, etc. The trial judge also considered that the normal living standards of both parties were high, noting that appellee expended over $90,000 during the same period for her living expenses. The trial court was satisfied with the evidence offered by appellant.

■ We will not set aside a trial court's determination regarding dissipation of marital assets unless the determination is clearly erroneous. *Ross v. Ross,* 90 Md.App. 176, 191, 600 A.2d 891, *vacated on other grounds,* 327 Md. 101, 607 A.2d 933 (1992). Although appellant, in the case *sub judice,* admit-

ted to spending some funds on gambling, we can not say, under the circumstances mentioned above, that the trial court was clearly erroneous in finding that appellant had met his burden to establish that these three assets had not been dissipated, "i.e. expended for the principal purpose of reducing the funds available for equitable distribution." *Jeffcoat*, 102 Md.App. at 311, 649 A.2d 1137.

## B. Parol Evidence

■ In 1964, appellant and his brother purchased the Millerton Farm in New York from their parents. In 1979, appellant's mother released the mortgage on the Millerton Farm. In an effort to have the farm classified as marital property, although appellee does not allege that the down payment and periodic mortgage payments made to appellant's parents were marital property, appellee does allege that appellant's "share of a lump sum payment to his mother in 1979 to pay off the mortgage consisted of marital funds." In support of this claim, appellee introduced the land records of New York, which reflected that the mortgage was paid. Appellant and his brother testified that they did not pay off the remaining amount left on the mortgage; they, further, testified that their mother released the mortgage on the Millerton Farm without consideration.

The trial court found "that the mortgage was released without monetary consideration and that, therefore, the Middleton [sic] Farm was entirely non-marital." On appeal, appellee argues that the trial court erred in admitting the oral testimony of the appellant and his brother because such testimony was barred by the parol evidence rule.

■ In *Bernstein v. Kapneck*, 290 Md. 452, 460, 430 A.2d 602 (1981), the Court of Appeals stated, "as a matter of substantive law, parole evidence ordinarily is inadmissible to vary, alter or contradict a contract . . . that is complete and unambiguous." We further explained the applicability of the parol evidence rule in *Paige v. Manuzak*, 57 Md.App. 621, 471 A.2d 758, *cert. denied*, 300 Md. 154, 476 A.2d 722 (1984). In

*Paige*, one party claimed that oral testimony that contradicted a laboratory report was barred by the parol evidence rule. *Id.* at 634–35, 471 A.2d 758. We dismissed the argument, holding that the parol evidence rule is inapplicable where "the document in question is not an integrated agreement between the parties." *Id.* at 635, 471 A.2d 758.

In the case *sub judice*, the document introduced in evidence is a New York land record signed only by appellant's mother. The document is not an integrated agreement between the parties to this action. "The parol evidence rule, being in essence a rule of substantive contract law, is of no help to" appellee. *Id.* Thus, the trial court did not err in admitting the oral testimony of appellant and his brother.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**