[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The plaintiff and the defendant married on January 23, 1971. The defendant has resided continuously in this state for at least twelve months next preceding the date of filing the complaint. There are two children issue of the marriage, neither of whom is CT Page 4625 a minor: Robert, born January 21, 1970 and Christopher, born September 6, 1972. The marriage has broken down irretrievably.
This is the second marriage for each of the parties. Its lengthy course was brought to a conclusion as the result of several factors. The plaintiff, age 55, and the defendant, age 57, had no significant financial success, and money was always a problem. The plaintiff has been, for the most part, a self employed carpenter during the marriage. This occupation has been the primary source of the parties' earnings. He has also been involved as an actor in theatrical productions. He has managed to earn some small monies from acting, but nothing considerable. This has, though, earned the plaintiff a pension through Actor's Equity when he turns 65. The plaintiff is in good health.
The defendant, on the other hand, pursued dancing and theater as her career. She has danced in a number of professional productions, and while these allowed her to make some financial contribution to the marriage, these were sporadic and not sizeable. She also contributed a small inheritance to the marriage. The defendant claims that she continues, even now, to be in training for her chosen profession. However, it appears that she last danced professionally more than ten years ago. She too, will have a pension through Actor's Equity available to her when she turns 60. Part of the discord between the parties involves the defendant's unwillingness or inability to retrain herself for a job that could produce steady earnings. Notwithstanding that, the defendant was the primary caretaker of the parties' children, and did run and manage the household for many years. The defendant, too, is in generally good health.
There was considerable evidence offered at trial by each party concerning the other's drinking habits and resultant proclivity for abusive behavior and violence. From all this evidence, the court concludes that each party was prone to, and did, imbibe excessively from time to time and engaged in verbal and sometimes physical fights with one another. Were it to end there, this court would lamentably call the hostilities a draw. Here, though, the defendant went one significant step further by engaging in an affair which lasted for more than several years until the suitor's death about two years ago. The defendant maintains the relationship was simply a friendship, but this court has little doubt that it was much more. It was this affair which was, as the plaintiff put it, the last "straw". Against this background, it is the defendant who bears final CT Page 4626 responsibility for the breakdown of the marriage. The plaintiff vacated the parties' residence in February, 1993.
The plaintiff's earning history as a carpenter has vacillated. His peak years were 1989 and 1990 when he averaged approximately $60,000 gross per year. The plaintiff indicates that this is because he was employed as a construction supervisor in a "boom period". More recently, the plaintiff had gross earnings of $25,000 in 1994, and nearly $57,000 in 1995, which he characterized at different times as a "mediocre" or "relatively good" year. While the plaintiff states his earnings, in his affidavit, at about $25,000 annualized, the court believes he has the capacity to earn $40,000 or better annually. This is based upon several facts: 1) his present carpentry jobs which is paying him about $635 for a 35 hour week, 2) his willingness and ability to barter his services for other's services or products, and 3)
his historical earnings and his belief that 1995 was a "mediocre" to "good" year. In bartering, the value of what the plaintiff has received, so far about $5,000, is income, though the plaintiff has not reported it as such. Finally, the plaintiff is actively seeking regular employment as a "facilities manager" which he estimates would provide him a salary of not more than $60,000 per year.
A significant liability of the parties, related to the plaintiff's earnings, are taxes, interest and penalties due the Internal Revenue Service. The parties filed no income tax returns from 1986 to 1993, until 1994. No tax payments have been made for these years. The parties' tax liability for these years is approximately $68,000.
After the parties separated in 1993, the defendant attempted to find work. The defendant's lack of marketable skills and, as the defendant herself concedes, her age, made this difficult. The defendant was able to find, in July, 1995, part-time seasonal employment at a florist and garden nursery, at a gross hourly wage of approximately $6.50. Her earnings in 1995 were $4,950, gross, $4,145 net. Her earnings for a full year would not exceed $8,000 to $10,000. Clearly, the ability to earn income favors the plaintiff. Additionally, there is an arrearage owed the plaintiff to the defendant for alimony pendente lite of $4,700, through May, 1996.
The defendant also offered evidence concerning the finances of one Joy Lenters, with whom the plaintiff has resided since CT Page 4627 approximately September, 1994. The evidence offered concerned Lenters' income and her contributions to household expenses and similar obligations. The court admitted such evidence as relevant to the plaintiff's current living expenses and, therefore, his ability to pay periodic alimony under Manaker v. Manaker,11 Conn. App. 653, 655 (1987).
The court, having considered all of the evidence and claims of the parties, and the statutory criteria including Connecticut General Statutes Sections 46b-81 and 82, enters the following orders:
(1) The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
(2) The plaintiff is ordered to pay periodic alimony of $750 per month to the defendant for five years, commencing July 1, 1996, and $1 per year thereafter until the defendant's death, remarriage or cohabitation whichever first occurs.
(3) The plaintiff is ordered to pay the arrearage of alimony pendente lite, of $4,600, at the rate of $150 per month together with interest on any unpaid balance at the statutory rate, commencing July 1, 1996 until fully paid.
(4) The plaintiff shall be liable for 75%, and the defendant for 25%, of any sum due and owing the Internal Revenue Service or State of Connecticut, Commissioner of Revenue Services, as the result of any income earned through and including December 31, 1993. Furthermore, each party shall have a right of contribution against the other for any sum actually collected by the Internal Revenue Service or the Commissioner, Revenue Services, in excess of such parties' share each year. Such contribution, if any, shall be made annually, within four months of the end of each tax year. The parties shall exchange tax returns and other necessary financial information within four months of the end of each tax year to allow this contribution to be determined.
(5) The plaintiff shall maintain life insurance in the amount of $100,000 on his life, naming the defendant as beneficiary, for so long as the plaintiff shall have an obligation to pay alimony to the defendant.
(6) Except as otherwise noted, each party shall retain the assets, including pension plans, and be responsible for those CT Page 4628 liabilities noted on their respective financial affidavits.
(7) The plaintiff shall pay $3,000 as an allowance for counsel fees to the defendant, at the rate of $500 per month from July 1, 1996 to December 1, 1996.
(8) Counsel for the plaintiff shall prepare the judgment file.
Dated at Stamford, Connecticut, this 7th day of June, 1996.
JOHN F. KAVANEWSKY, JR., JUDGE