## JOAN VAIUSO *v.* JOSEPH VAIUSO
### (2850)

TESTO, DUPONT and BORDEN, Js.

Argued April 3—decision released June 12, 1984

*Randall B. Chapnick,* for the appellant (defendant).

*Wesley W. Horton,* with whom, on the brief, was *William R. Moller,* for the appellee (plaintiff).

BORDEN, J. This is an appeal[1] by the defendant from the judgment of the trial court dissolving the marriage of the parties. The defendant, on appeal, makes a wholesale attack on the trial court's factual findings and conclusions. Because the trial court's determinations are subject to limited review in domestic relations cases; *Carpenter* v. *Carpenter,* 188 Conn. 736, 739, 453 A.2d 1151 (1982); and because the trial court's findings and conclusions are supported by the evidence on the whole record, we find no error.

The trial court found a number of facts as hereinafter discussed. The parties were married in September, 1973, when the plaintiff was twenty-nine years old and the defendant was twenty-four years old. No minor children were born to the parties, although the plaintiff was very eager to have a family and had made the defendant aware of her eagerness in her discussions with him prior to their marriage. In those discussions the plaintiff told the defendant that because of her concern about the recurrence of cancer which she had had in her reproductive organs in 1969, and because of her age, she wanted to start a family immediately after the marriage. The defendant agreed. After the marriage, however, he persuaded her that they should not attempt to have children during the first year because of financial reasons. After the first year of marriage their financial situation improved, but the defendant still continued to refuse to start a family. Communication between them broke down almost completely and the plaintiff, eager to work out their marital problems, urged the defendant to join in marital counseling but he refused.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The plaintiff herself ultimately began counseling with a priest. As a result of the defendant's inattention toward the plaintiff, his refusal to have a family and his refusal to participate in marital counseling, the plaintiff instituted an action to dissolve their marriage in 1975. The parties were separated for a period of about nine months after that action was commenced and, on the eve of the final hearing for dissolution, the plaintiff contacted the defendant and told him of her continuing desire to work out their marital problems. The defendant agreed to continue the marriage, but only on his terms. The plaintiff agreed and they reconciled. Thereafter, the defendant's continued lack of affection, his inattentiveness to the needs of the plaintiff, his insulting comments to her, and his involvement with his family and friends to the exclusion of the plaintiff, led to the present action by the plaintiff to dissolve the marriage.

The trial court further found that both parties were gainfully employed during the marriage. The plaintiff was employed in various secretarial positions until 1979 when she opened her own hypertrichology business. The defendant worked throughout the marriage for Vaiuso Farms, Inc., a family business of which he is a twenty-five percent owner. In addition, he partially owns and operates a business known as J & J Christmas Trees,[2] and he also owns and operates a snowplowing business.

With respect to the parties' ownership of real property, the trial court made certain factual findings. Shortly before the marriage, the defendant purchased a two family house on Leete Street, West Haven, title to which was placed in his name and his father's name although the defendant provided all the consideration. After the marriage the defendant continued to hold title

---

[2] J & J Christmas Trees is a partnership owned and operated by the defendant and his cousin.

to that property jointly with his father for several years until it was sold, even though during that time the parties occupied it as their marital home. The house was sold in 1978 and the defendant testified that he received a check for approximately $25,000 at the time of the closing. He did not, however, provide the court with an explanation as to the disposition of the funds. The parties acquired a two-family house on Thompson Street, West Haven, in 1974 which was sold in 1978. The defendant testified that he received approximately $9000 at the time of the closing. He could not, however, offer any explanation as to the disposition of the proceeds from the sale. The parties jointly owned a one-family home on Hickory Hill Road, Branford, subject to a first mortgage having a balance of $38,000. The defendant's real estate appraiser valued the home at $150,000.

The findings of fact by the trial court as to personal property were as follows. The plaintiff operates a hypertrichology business which she started in 1979 with less than $2000 worth of furniture and equipment. The plaintiff and the defendant have divided the furniture and furnishings from the home. The defendant owns twenty-five percent of the farm business; the value of his share of that business was more than the $2000 he claimed in his financial affidavit. The defendant maintained an unusual relationship with his family in that he had bank accounts in his name and his father's name, in his name and his mother's name, and in his name and his cousin's name under the trade name of J & J Christmas Trees. He owns equipment in his snowplowing business and in the J & J Christmas Tree business.

The court further found that, although the defendant is a hard-working man, his concern for money and wealth was always much more important to him than his wife and his marriage. It also found that the years, during which the plaintiff, who is thirty-eight years old,

could have realized her desire for giving birth to a family, have passed her by because of her dedication to the marriage and to her continued efforts to make it work. The court concluded that the defendant was primarily responsible for the breakdown of the marriage. It awarded the defendant's interest in the family home on Hickory Hill Road, Branford, to the plaintiff as lump sum alimony. The court also found that the plaintiff had no liquid assets and awarded her $6500 in counsel fees.

The defendant has taken a shotgun approach in this appeal; see *Baker* v. *Baker,* 166 Conn. 476, 478, 352 A.2d 277 (1974); and has assigned as error virtually all of the trial court's findings and conclusions. The plaintiff urges us not to consider the issues raised by the defendant because of his failure to comply with Practice Book § 3060F in that he did not properly state the facts of the case. In view of the fact that the defendant properly set forth the facts in his reply brief, and in the interests of justice, we will review his claims. See Practice Book § 3164; *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 330, 430 A.2d 1 (1980).

The principal issue on appeal is whether the trial court abused its discretion in awarding the defendant's interest in the family home to the plaintiff as lump sum alimony. In this connection, he argues that the court erred in concluding that he failed to account for approximately $34,000 in funds he received from the sale of two houses, one on Leete Street and the other on Thompson Street, West Haven. He maintains that both parties testified that the proceeds from the sale of these properties went toward the purchase of the house on Hickory Hill Road, Branford.

The parties' testimony on the disposition of these funds was far from clear. While the plaintiff testified that part of the funds was used to purchase the house

on Hickory Hill Road, the defendant testified that the $9000 from the Thompson Street sale was placed in a savings account. He was, however, unable to state in what bank it was deposited or what the funds were used for. With respect to the $25,000 from the Leete Street sale, the defendant testified that he did not know what happened to it. At the second hearing held in this case, on September 15, 1982, the defendant offered no evidence regarding the disposition of the funds.

The ultimate question before us on this issue is whether the trial court could have reasonably concluded that the defendant did not account for the funds. See *Corbin* v. *Corbin,* 179 Conn. 622, 624, 427 A.2d 432 (1980). The weight given to the evidence before it and the credibility of the witnesses are within the sole province of the trial court. *Carpenter* v. *Carpenter,* supra, 742; *Dubicki* v. *Dubicki,* 186 Conn. 709, 713, 443 A.2d 1268 (1982); *Corbin* v. *Corbin,* supra, 624–25. Our review of the record before us indicates that the defendant was in almost total control of the parties' finances. He failed, however, to provide the court with an explanation as to the disposition of the funds. Moreover, although the testimony might have supported a different finding, the trial court was not bound to accept as persuasive even testimony that was not directly contradicted. *Johnson* v. *Healy,* 176 Conn. 97, 103, 405 A.2d 54 (1978). It was therefore reasonable for the court to conclude as it did. See *Leveston* v. *Leveston,* 182 Conn. 19, 24, 437 A.2d 819 (1980).

The defendant maintains that on the basis of all the evidence before it and on the basis of the law, the court could not have reasonably concluded as it did in awarding the parties' real estate to the plaintiff as lump sum alimony. In determining whether to award alimony, and the amount of the award, the court " 'shall consider the length of the marriage, the cause for the . . . dissolution of the marriage . . . the age, health, station,

occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and [any property] award . . . pursuant to section 46b-81 . . . .' " *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982), quoting General Statutes § 46b-82. The court is, however, under no obligation to make express findings as to each of these statutory criteria; *Carpenter* v. *Carpenter,* 188 Conn. 736, 740, 453 A.2d 1151 (1982); and we, as a reviewing court, will not vary the weight placed upon specific statutory criteria or the weight placed upon documentary or testimonial evidence. *Barnes* v. *Barnes,* 190 Conn. 491, 495, 460 A.2d 1302 (1983). Our review is limited to determining whether the trial court abused its discretion in making its financial award. Id., 494. In the present case, the trial court filed an exhaustive memorandum of decision, in which it considered the statutory criteria. Its final determination is legally and logically consistent with the facts found and will not be disturbed. *Vanderlip* v. *Vanderlip,* 1 Conn. App. 158, 160, 468 A.2d 1253 (1984). We note, moreover, that "[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975); *Anderson* v. *Anderson,* 191 Conn. 46, 57, 463 A.2d 578 (1983).

The defendant next argues that trial court erred in concluding that the parties had divided the furniture and furnishings from their home. He contends that the plaintiff's own testimony refuted this factual conclusion. Our review of the transcript indicates that the plaintiff testified that they had agreed on a division of these items of personalty and that the relative values of what she took and what he took were equal.[3] She

---

[3] Although on cross-examination the plaintiff also testified that there was not an agreement on all the items, she did testify several times, on direct examination in her case in chief and in her rebuttal evidence, that there was such an agreement.

also, in her testimony, specifically claimed entitlement to the items which she had taken. The defendant did not, in his testimony, claim that there was no such agreement. He merely disputed the relative values of what each party had taken. Nowhere does it appear in this record that the defendant requested the court to reallocate the items of personalty taken by each, which were listed on exhibits in this case. Under these circumstances, we find no abuse of discretion in the court's leaving the personalty in its status quo.

The defendant contends that the trial court erred in determining that he owned or had control of at least $30,000 of funds actually owned and controlled by Vaiuso Farms, Inc., and that the true value of his interest in the farm was more than $2000. The court reached no such conclusion. What the court concluded was that the value of the defendant's interest in the farm, including sums on deposits in banks, the value of the farm equipment and the value of the good will of the business, was more than the $2000 he claimed in his financial affidavit. The discussion about the $30,000 concerned the court's attempt to estimate the size of the farm's bank accounts from the interest that passed through, for federal income tax purposes,[4] to the defendant in 1980. This conclusion is not clearly erroneous in light of the evidence in the record as a whole.

The defendant maintains that the court based its valuation of his interest in the farm primarily upon $1850.08 of savings bank interest which was passed through to him, for federal income tax purposes, from the farm's account and that the court disregarded the fact that the farm was a subchapter S corporation. Our reading of the memorandum of decision does not indicate that the court primarily relied on this one finding in reach-

[4] The corporation was a subchapter S corporation. See I.R.C. § 1361 et seq. (1982).

ing its conclusion as to the defendant's interest in the farm. In any event, the defendant could have moved pursuant to Practice Book § 3082 for the trial court to clarify its decision. See *Barnes* v. *Barnes,* supra, 493–94. Since it is the responsibility of the appellant to provide us with an adequate appellate record, we decline under the present circumstances to remand the case to correct an alleged deficiency which the appellant could have remedied. Id., 494; *Urban* v. *Leggio,* 1 Conn. App. 226, 228, 470 A.2d 1226 (1984).

The defendant argues next that the court erred in disregarding the fact that his Christmas tree business was a partnership, in that it attributed all the assets of the partnership to him; it attributed nonexistent assets to the partnership; it did not take into consideration the liabilities of the partnership; and it faulted the defendant for having a bank account with his cousin under the trade name of the partnership.

Although certain of the court's findings with regard to the defendant's partnership with his cousin are somewhat ambiguous, we cannot, in view of the defendant's failure to move for clarification of the court's decision, say that the court's conclusion was clearly erroneous. Practice Book § 3082; *Urban* v. *Leggio,* supra, 228. Moreover, our review of the record indicates that much if not all of the evidence relating to the partnership was in the possession and control of the defendant and his cousin. The court found that the defendant had a safe-deposit box in the name of J & J Christmas Trees; that he failed to disclose the existence of the safe-deposit in his interrogatories before the trial; that at about the time this action commenced he arranged to have his name removed from the box; that the box still contains the records of the business; and that the partnership was almost entirely a cash business. Where a party through his own wrongful conduct limits the financial

evidence available to the court, that party cannot complain about the resulting calculation of a monetary award. *Leveston* v. *Leveston,* supra, 24.

The defendant next maintains that the court erred in concluding that he owned the equipment in his snowplowing business, when this conclusion is completely unsupported by any evidence. Our review of the transcript indicates that there was ample evidence to support the court's conclusion on this issue. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The defendant argues that the court erred in concluding that he had an "unusual relationship" with his family. The court found that throughout the marriage the defendant maintained bank accounts in his name and his father's name, in his name and his mother's name, and in his name and his cousin's name. In addition, the court found that although from 1973 to 1979 the defendant was the owner of the property in which the parties made their marital home, title to the property was held in his name and his father's name. In view of these findings, which are supported by the evidence on the record, the court's conclusion that the defendant maintained an unusual relationship with his family is not clearly erroneous. Id.

The defendant next argues that the court erred in concluding that a thirty-eight year old woman cannot give birth to children and that the plaintiff herself was not able to do so. We do not read the court's conclusion as stating that a thirty-eight year old woman cannot give birth. While it could, perhaps, have been more aptly stated, the gist of the court's conclusion was that, because of the plaintiff's efforts to make the marriage work by complying with the defendant's wishes, the years, during which her desire to give birth to children and raise a family was likely to be realized, had passed her by.

The defendant next argues that the trial court erred in concluding that he was the cause of the marital breakdown. The court made extensive findings of fact with respect to the cause of the marital breakdown. Its conclusion that the defendant was the cause of the breakdown embraces those findings; is well articulated in the memorandum of decision; is sufficiently supported by the evidence on the record; and is not clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra.

The defendant finally argues that the trial court erred in awarding $6500 in attorney's fees to the plaintiff. He maintains that, from all the evidence, it was quite clear that neither party had ample liquid funds with which to pay counsel fees. Whether to allow counsel fees, and if so in what amount, lie within the broad discretion of the trial court. *Anderson* v. *Anderson,* supra, 58. In exercising its broad discretion, the court must consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the respective financial abilities of the parties. *Anderson* v. *Anderson,* supra, 58-59. In the present case, the court found that the plaintiff did not have any liquid assets with which to pay her attorney. Whether a party has ample liquid funds to pay counsel fees is determined by examining the total financial resources of the parties in light of the statutory factors. Id., 59. We have carefully considered the totality of the circumstances reflected in the court's financial awards and we cannot say that it abused its discretion and acted unreasonably in granting the plaintiff's request for counsel fees.

The defendant concedes that the postjudgment orders which he assigned as error are not properly before us and need not be considered. One involving counsel fees for the plaintiff to defend this appeal

was not considered by this court because it was not properly appealed; Practice Book §§ 3062, 3096; and the other, involving a stay on appeal, has been lifted.

There is no error.

In this opinion the other judges concurred.