[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on July 16, 1977 in Bridgeport, Connecticut. Both parties have resided continuously in this state for at least twelve months next preceding the date of filing the complaint; therefore, the court has jurisdiction. There are no minor children issue of this marriage. The marriage has broken down irretrievably, and a decree of dissolution will enter on that ground.
Prior to trial, the parties entered into stipulations. The first stipulation, dated November 30, 2000, recognized the defendant's right to remove certain personal property from the marital residence. In that same agreement, the plaintiff relinquished all interest in a burial plot located in Ponce, Puerto Rico.
The second stipulation dated May 3, 2001, established that in March 1999, the plaintiff had liquidated two jointly owned certificates of deposit that were valued at $21,000. He did not advise the defendant of his actions; he did not share the proceeds with the defendant. On that same date, the parties entered into an agreement concerning the appraisal of the marital residence.
These stipulations are accepted by the court and incorporated into the judgment.
The plaintiff husband is forty-four years old. When he was twenty-four, he suffered an industrial accident wherein he injured his lower back. He has been unemployed since 1984. The plaintiff's primary income is disability payment in the amount of $277 per week.
The plaintiff's other revenue is the rent income received from a three family house located on Horace Avenue in Bridgeport, Connecticut. He and the defendant purchased the building in 1995 for $98,000.[1] That real estate has a current market value of $95,000. Throughout their marriage, the plaintiff has also received proceeds from settlements he received as a result of injuries sustained in automobile accidents. At the time of this trial, the plaintiff had a pending civil litigation involving yet another automobile accident.
The plaintiff was the general manager of the Horace Avenue real estate. Although the apartment building had income producing capability, the plaintiff failed to maximize this potential. Instead, he lived in one of the apartments. Another apartment was often vacant. The plaintiff allowed the tenant in the third apartment to reside rent-free. That tenant was romantically linked to the plaintiff.[2] Nevertheless, in CT Page 1007 his financial affidavit the plaintiff indicates gross weekly rental income in the amount of $456. His admitted gross weekly income is therefore $733.00. He has available cash of at least $3,000, the amount remaining from certificates of deposit he surreptitiously cashed during the pendency of this dissolution action.[3]
The court next turns to the circumstances of the defendant wife. The defendant is forty-seven years old with a third grade education. During a large portion of their marriage, she was employed in minimum skill occupations. She is currently receiving social security disability and state supplemental income in the amount of $174.
There was a great deal of testimony concerning separate financial transactions by both parties. The court finds that at times during the marriage, both parties maintained separate bank accounts. The defendant's account, established after a combination of a large retroactive social security benefits payment and a "loan" from her mother,[4] was used in part to pay household expenses and to repay her mother. The plaintiff's accounts were used for personal expenditures such as cars and vacations. Similarly, the debts listed on the plaintiff's financial affidavit were primarily used for personal expenditures.[5]
The defendant was subjected to physical and emotional abuse throughout this marriage. She was forced by the plaintiff to work despite serious physical pain. At one time the plaintiff had the defendant discharged from a hospital on the day of surgery, ignoring a physician's warnings to the contrary. Although in 1994 the defendant left the marital home in Puerto Rico to escape physical abuse and to re-unite with her oldest child, the plaintiff soon followed and the mistreatment continued.
The defendant provided virtually all of the emotional and financial support received by the family's three children. Throughout their marriage, the plaintiff refused to supply even the basic essentials for his children. While in Puerto Rico, despite his access to rental income, the plaintiff would not provide clothing for his children in order that they attend school. Although the plaintiff feigned generosity, he did not give the defendant sufficient funds to cover basic household expenses. Accordingly, $1,050 of the debts listed on the defendant's financial affidavit is for utility costs incurred before she left the Horace Avenue home.
The court next considers the causes of the breakdown of this marriage. The husband claimed that his wife was argumentative and assaultive. There is some merit to this contention. Indeed, the plaintiff secured temporary restraining orders during the latter years of their marriage. However, the court finds that the plaintiff exaggerated the nature of the CT Page 1008 defendant's conduct. Furthermore, although the plaintiff claims that he attempted reconciliation, there is no evidence to support this contention.
What the plaintiff ignores is the fact that throughout their marriage, he engaged in extra-martial affairs. The last such liaison, one with the defendant's sister, caused the final breakdown of this relationship. Many of his affairs were with tenants in buildings he owned jointly with the defendant. As a consequence of these affairs, the rental income was often forfeited. Additionally, the plaintiff's miserly conduct eliminated any semblance of partnership that might have existed in this marriage. Furthermore, the plaintiff physically abused the defendant throughout their marriage. In short, this marriage had been punctuated by troubles for many years. The plaintiff was unfaithful, cruel and selfish, preferring to hoard family assets.
In sum, both parties share responsibility for the breakdown of their marriage. The court, though, finds that the primary responsibility rests with the plaintiff. Based on the evidence heretofore stated, the court infers a lack of commitment by the plaintiff to the marital relationship.
Before entering final orders, the court must note that the plaintiff has secreted more than just the certificates of deposit he converted at the initiation of this dissolution proceeding. He cannot account for the monies received from the sale of the marital home in Puerto Rico. "The party who has control over marital assets and is charged with their dissipation has the burden for accounting for those assets. Vaiuso v.Vaiuso, 2 Conn. App. 141, 146, 477 A.2d 678, cert. denied,194 Conn. 807, 482 A.2d 712 (1984)." Manaker v.Manaker, 11 Conn. App. 653, 659, 528 A.2d 1170 (1987). Additionally, the plaintiff's bank records reflect deposits that exceed the net income stated on his financial affidavit. An award of alimony and child support may be based upon, in part, consideration of the assets that the party in a dissolution proceeding retains.Beede v. Beede, 186 Conn. 191, 196, 440 A.2d 283
(1982).
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown. CT Page 1009
2. The plaintiff shall pay to the defendant as periodic alimony the sum of two hundred ($200.00) dollars per month for forty-eight (48) months beginning January 1, 2002 and concluding December 1, 2005.
 At the conclusion thereof, the plaintiff shall pay to the defendant, as alimony, the sum of one ($1.00) dollar per year beginning January 1, 2006.
 Additionally, the defendant shall be entitled to fifty (50%) percent of the net rental income from the Horace Avenue property. The plaintiff shall provide a monthly accounting of the property's rental receipts and business expenditures.
 The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the defendant's death; (b) the defendant's remarriage; (c) in the discretion of the court pursuant to Connecticut General Statutes section 46b-86 (b), or the defendant's cohabitation.
3. (a) The plaintiff shall have exclusive use and possession of the marital home at 109 Horace Avenue, Bridgeport, Connecticut. The defendant shall quitclaim all interest in the property to the plaintiff.
 (b) The plaintiff shall immediately secure refinancing for the Horace Avenue property. In the interim, the plaintiff shall be responsible for, and shall indemnify the defendant against, payment of the mortgage, property taxes and insurance and shall be allowed in full any tax deductions therefore.
4. The court shall continue to reserve jurisdiction over matters relating to the refinancing of the property.
5. The defendant is awarded the sum of fourteen thousand ($14,000) dollars, one-half of the amount contained in the certificates of deposit cashed by the plaintiff at the commencement of this action. The plaintiff shall pay the defendant three thousand ($3,000) dollars on or before January 15, 2002. He shall then pay the defendant the sum of two thousand ($2,000) dollars on or before each succeeding January 1st until the entire amount is paid in full.
6. The plaintiff is awarded the entire amount of any sums received from the pending civil litigation.
7. Except to the extent more specifically set forth herein, each order of CT Page 1010 the court is to be effectuated within thirty (30) days of the date of this decision.
8. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for Tall liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
DEWEY, J.