******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JEFFREY A. REINER ET AL. *v.*
MICHAEL D. REINER ET AL.
(AC 44380)

Bright, C. J., and Moll and DiPentima, Js.

*Syllabus*

The plaintiff sought, inter alia, a declaratory judgment from the trial court determining the manner in which the plaintiff's buy out of the defendant's interest in certain parcels of real property pursuant to their settlement agreement was to be calculated. The settlement agreement provided that the buyout amount would be based on the fair market value of each property multiplied by the defendant's interest in each property. The parties disagreed as to whether "interest," as used in the settlement agreement, meant equitable interest or a percentage of the fair market value of the property, without taking into account any existing mortgages. This court, in a prior action between the parties, had determined that the settlement agreement was ambiguous with respect to the calculation of the buyout amount. In the present case, the trial court, noting that it was bound by this court's prior decision, determined that the term "interest" meant "equitable interest" and, accordingly, that the calculation of the buyout amount required consideration of the existing mortgages on the properties. On the defendant's appeal to this court, *held* that the trial court properly determined that the buyout amount for the defendant's interests in the properties was to be calculated by multiplying his percentage interest in each property by the difference of its fair market value minus any outstanding mortgage debt: contrary to the defendant's claim, the trial court's reliance on § 201 of the Restatement (Second) of Contracts in resolving the underlying action, rather than § 220 of the Restatement (Second) of Contracts, was not improper because § 220 was not applicable, as the word "interest" as used in the settlement agreement had no habitual or customary meaning, § 201 was applicable because the parties attached different meanings to the term "interest," and there was ample evidence to support the trial court's determination that the defendant had reason to know that the plaintiff believed that the term, as used in the settlement agreement, meant "equitable interest" because the defendant was aware of the mortgages on the properties and, as an attorney specializing in transactional real estate, he should have known that he did not have legal title to the mortgaged properties and was unable to convey a full legal interest in his share of the fair market value of the properties; moreover, the trial court's decision not to ascribe any weight to certain e-mails between the defendant, his attorney and the plaintiff's attorney, in which the plaintiff's attorney indicated that the buyout amount was to be determined by value, not equity, and which the defendant claimed showed that the plaintiff knew of the defendant's interpretation of the term "interest," was not clearly erroneous because the e-mails were sent after the agreement was negotiated, there was evidence that the plaintiff's attorney was not involved in the negotiations and was unaware of the mortgages encumbering the properties, and there was no evidence that the plaintiff had read the e-mails, discussed them with his attorney, or agreed with his attorney's interpretation of how the buyout amount should be calculated; furthermore, contrary to the defendant's claims, the trial court's conclusion as to the proper interpretation of the term "interest" did not conflict with the plain language of the agreement, which was ambiguous, and the trial court properly considered both the entire language of the agreement and evidence beyond the language of the agreement when making its factual findings regarding the intent of the parties; additionally, the defendant inadequately briefed his claim that equity required that the mortgage encumbering one of the properties not be included in the calculation of the buyout amount for that property because the mortgage was taken out solely to fund security deposits on the property that had not previously been funded due to the alleged mismanagement of the plaintiff, and, even if the claim had been adequately briefed, the issue did not involve a determination of equity but,

rather, the interpretation of the contract, and there was no evidence that the parties intended to treat the mortgage on that property differently than the mortgages on the other properties.

Argued April 12—officially released July 26, 2022

*Procedural History*

Action for, inter alia, a judgment declaring that the calculation of the purchase price required to be paid for certain real properties under a settlement agreement take into account outstanding mortgage debt, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Schuman, J.*; judgment for the named plaintiff, from which the named defendant appealed to this court. *Affirmed.*

*Gary J. Greene*, for the appellant (named defendant).

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellee (named plaintiff).

*Opinion*

BRIGHT, C. J. In this declaratory judgment action, the defendant Michael D. Reiner appeals from the judgment of the trial court rendered in favor of the plaintiff Jeffrey A. Reiner.[1] On appeal, the defendant claims that the court erred in concluding that the term "interest," as used in the buyout provisions of the parties' settlement agreement (agreement), meant "equitable interest" and, thus, that the buyout amount for the defendant's interests in certain parcels of real property is equal to his percentage interest in each property multiplied by the difference of the fair market value of the property minus any outstanding mortgage debt. We disagree and, accordingly, affirm the judgment of the trial court.

This dispute between brothers returns to us after our decision in *Reiner* v. *Reiner*, 190 Conn. App. 268, 210 A.3d 668 (2019). In *Reiner*, we affirmed, albeit on different grounds, the trial court's order denying the plaintiff's motion to enforce the parties' agreement pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 729 (1993) (*Audubon*),[2] after concluding that the buyout provisions in the agreement, which stated that the plaintiff would buy out the defendant's interests in certain properties after the death of the parties' mother, were not clear and unambiguous.[3] See *Reiner* v. *Reiner*, supra, 283–84. The plaintiff subsequently filed the underlying action in the Superior Court wherein he sought a declaratory judgment determining "the calculation of the purchase price for the [defendant's] 'interest[s]' in [the] properties . . . ." In its memorandum of decision dated October 30, 2020, the court determined that, "for the purposes of the buyout provisions of the agreement, 'interest' shall mean equitable interest, or [the defendant's] share of the fair market value of the property minus the outstanding mortgage debt." This appeal challenges the court's determination.

Our opinion in *Reiner* sets forth the following relevant facts and procedural history. "The [defendant] and the [plaintiff] are brothers who were two of the three primary beneficiaries of four irrevocable trusts (Reiner Trusts) that were established by their parents, Eleanore Reiner and Leo P. Reiner.[4] The [plaintiff] was the sole trustee of the Reiner Trusts. The Reiner Trusts owned several parcels of real property (Reiner Trusts properties) that had a substantial value; however, a majority of the properties were encumbered by mortgages. Eleanore Reiner also was the sole member of 711 Farmington, LLC, and Canton Gateway, LLC. 711 Farmington, LLC, and Canton Gateway, LLC, each owned a single parcel of real property, both of which were encumbered by a mortgage. After a dispute arose regarding the Reiner Trusts properties, the [defendant], in 2011, commenced the [prior] action and several other parallel actions against the [plaintiff] alleging that he tortiously

had mismanaged the Reiner Trusts properties. On July 5, 2012, the [defendant], the [plaintiff], and several other individuals and entities associated with the Reiner Trusts executed a settlement agreement to resolve the [prior] action, the parallel actions, and other disputes. . . . The agreement contained several provisions in which the [plaintiff] agreed to buy out the [defendant's] interests in certain properties after the death of Eleanore Reiner. The following buyout provisions are directly at issue . . . .

"Section 1 (a) of the agreement provides: '[The plaintiff] shall buyout [the defendant's] interests in the Reiner Trusts and the Reiner Trusts [p]roperties by paying cash to [the defendant] in proportion to his interests therein no later than 280 days following Eleanore Reiner's death. The buy-out amount payable to [the defendant] for his interests in the Reiner Trusts will be based on the fair market value of each of the Reiner Trusts [p]roperties at the time of Eleanore Reiner's death, multiplied by [the defendant's] interests in each [Reiner] Trust[s] [p]roperty with a deduction of ten (10%) percent to compensate for a minority discount and for the fact that there is no real estate brokerage commission.' Section 1 (b) of the agreement detailed the manner in which the fair market value for each of the Reiner Trusts properties was to be determined. The parties also agreed that the parties' 'interests' in the Reiner Trusts properties accurately were set forth in the ' "Trust Property Schedule," ' which was attached to the agreement. . . .

"Section 2 of the agreement provides in relevant part: 'In connection with the execution and delivery of this [a]greement, Eleanore Reiner will immediately transfer, by [w]arranty [d]eeds (i) her interests (as sole member of 711 Farmington, LLC) in [711 Farmington Avenue, West Hartford (711 Farmington)] as follows: two thirds (2/3) to [the plaintiff] and one-third (1/3) to [the defendant] . . . and (ii) her interests (as sole member of Canton Gateway, LLC) in [50 Albany Turnpike, Canton (Canton Gateway)] as follows: three fourths (3/4) to [the plaintiff] and one-fourth (1/4) to [the defendant] . . . . Such transfers are being made upon the following conditions . . . .

" '[The plaintiff] shall buy out [the defendant's] interests in each [of] 711 Farmington and Canton Gateway by paying cash to [the defendant] no later than 280 days following Eleanore Reiner's death. The determination of the fair market value of 711 Farmington and Canton Gateway will be based on the same formula and terms used to determine the fair market value of the Reiner Trust[s] [p]roperties provided for in [§] 1 (a) of this [a]greement above except that the valuation shall be subject only to a four percent (4%) discount, not ten percent (10%). [The plaintiff] will have 280 days from the date of Eleanore Reiner's death, to obtain financing

and consummate the buyout.' . . .

"On April 7, 2017,[5] the [plaintiff] filed the motion to enforce the agreement that [was] the subject of [the] appeal [in *Reiner*]. Therein, he argued that certain buyout provisions of the agreement had been triggered as a result of the recent death of Eleanore Reiner, and that a dispute existed between himself and the [defendant] as to the interpretation of those provisions. In particular, Eleanore Reiner's death triggered the [plaintiff's] obligation, under § 2 of the agreement, to buy out the [defendant's] one-third interest in 711 Farmington and his one-quarter interest in Canton Gateway. Her death also triggered the [plaintiff's] obligation, under § 1 of the agreement, to buy out the [defendant's] interest in the Reiner Trusts properties, including 603 Farmington Avenue in Hartford [603 Farmington]. The [defendant] and the [plaintiff] were unable to reach an agreement on how to determine the price that the [plaintiff] was to pay the [defendant] for his interests in the properties. The [plaintiff] claimed that the buyout price of the [defendant's] interests is intended to be calculated as the [defendant's] proportionate interest in the equity in the properties, after deducting the debt secured by any mortgages, less the percentage discounts. The [plaintiff] requested that the court adjudicate the dispute by enforcing the agreement in accordance with his interpretation.

"On April 17, 2017, the [defendant] filed an objection to the [plaintiff's] motion to enforce the agreement. Therein, the [defendant] disagreed with the [plaintiff's] interpretation and advanced his own contrary interpretation of the agreement. The [defendant] maintained that the settlement agreement clearly and unambiguously provides that the buyout amount is to be ' "based on the fair market value" of each of the properties,' which amount did not include consideration of the existing mortgages on the properties.

"On August 10, 2017, the [plaintiff] filed a supplemental memorandum in support of his motion to enforce the agreement. In his supplemental memorandum, the [plaintiff] argued that the agreement clearly and unambiguously provides that the amount of the buyout must take into consideration the mortgages on the properties. The [plaintiff] argued that a contrary interpretation would be in conflict with Connecticut mortgage jurisprudence, and would result in an absurd result in the form of a substantial unintended windfall for the [defendant].[6]

"On October 23, 2017, following an *Audubon* hearing, the court issued a memorandum of decision in which it denied the [plaintiff's] motion to enforce the agreement and concluded that the agreement was clear and unambiguous in conformance with the [defendant's] interpretation [that the buyout amount for the defendant's interests does not include consideration of the existing

mortgages on the properties].'' (Footnote added; footnotes in original; footnotes omitted.) *Reiner* v. *Reiner*, supra, 190 Conn. App. 270–76.

The plaintiff appealed to this court, claiming that ''the clear and unambiguous language of the agreement specifies that the buyout amount is the [defendant's] equitable interest in the properties, namely, the fair market value of the properties less the amount of any mortgage encumbrances.'' Id., 270, 279. In response, the defendant argued ''that the [trial] court properly determined that the agreement clearly and unambiguously provides that the buyout amount is the fair market value of the properties without regard to any debt associated with the properties.'' Id., 279. We disagreed with both parties and instead concluded that, because each party had set forth a reasonable interpretation of the buyout provisions, the agreement was ''ambiguous with respect to the method of calculation of the buyout amounts . . . .'' Id., 283. Accordingly, we held that the court had ''properly denied the [plaintiff's] motion to enforce the agreement, [but] it incorrectly determined that the agreement [was] clear and unambiguous . . . .'' Id., 284.

Thereafter, on June 28, 2019, the plaintiff filed with the trial court in this action a three count complaint alleging (1) breach of the agreement (count one), (2) breach of the implied covenant of good faith and fair dealing (count two), and (3) that ''[a] dispute exists between the parties as to the calculation of the purchase price for the [defendant's] 'interest(s)' in said properties which requires judicial determination'' (count three). On July 17, 2019, the defendant filed an answer and raised five special defenses: breach of the agreement, collateral estoppel, res judicata, waiver, and that the plaintiff sought damages that were not allowed under the agreement. With respect to the plaintiff's complaint, both the parties and the court construed the third count as seeking a declaratory judgment concerning the meaning of the agreement's buyout provisions. The parties further agreed that ''the court's determination on the declaratory judgment count would be binding on the remaining counts of the complaint as well as the following related actions: *Rhino Real Estate Investors, LLC* v. *JAR Partners, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-18-6091460-S [*Rhino Real Estate I*]; *Rhino Real Estate Investors, LLC* v. *JAR Partners, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-18-6091459-S [*Rhino Real Estate II*];[7] and *Reiner* v. *Reiner*, Superior Court, judicial district of Hartford, Docket No. CV-11-6020238-S, which was the original action that generated the appeal [in *Reiner*].''[8] (Footnote added.)

A three day trial to the court was held on the plaintiff's declaratory judgment count on October 1, 2 and 6, 2020. At trial, the plaintiff argued that ''interest,'' as used in

the buyout provisions, meant "equitable interest" and that, accordingly, the buyout amount for the defendant's interests in 603 Farmington, 711 Farmington, and Canton Gateway required consideration of the existing mortgages on those properties. Conversely, the defendant argued that the parties had not intended to include the existing mortgages in the calculations for the buyout amount.

On October 30, 2020, the court issued a memorandum of decision wherein it adopted the plaintiff's proposed interpretation, stating: "The court finds that each party had a consistent and sincere belief that the agreement embodied his interpretation of the word 'interest.' Abby Reiner Delales, the daughter of [the plaintiff] who negotiated on his behalf, believed in good faith that 'interest' meant equitable interest, so that [the plaintiff's] buyout payment would equal the value of [the defendant's] equity in the properties. At the same time, [the defendant] earnestly believed that 'interest' meant percentage of ownership, so that the buyout payment would equal his percentage of the properties' fair market value. There is no parol evidence that undermines either party's position. The court places no reliance on the various claimed admissions against interest in the case, as the court views them as improvident or lacking in probative value.

"Under these circumstances, the most logical conclusion is that there was no meeting of the minds. . . . However, the parties have not pleaded that claim and in fact have admitted that a valid contract exists. . . . Accordingly, the court lacks authority to find that there was no meeting of the minds. . . .

"The court must look for the next best solution. The Appellate Court stated that, while it found that each side had a reasonable interpretation of the buyout provisions and, as a result, the language of the contract was ambiguous, it did not 'decide which party has the better interpretation.' . . . The court must therefore look for the better or more reasonable interpretation.

"The court finds some guidance in the Restatement (Second) of Contracts, which our appellate courts have cited in contract cases. . . . Section 201 (2) provides in part as follows: 'Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.' . . .

"In this case, the court finds no basis to say that [the plaintiff] or [Delales] had 'reason to know' that [the defendant] believed that 'interest' meant percentage of fair market value. On the other hand, [the defendant]

did have reason to know that [the plaintiff] and [Delales] believed that 'interest' meant equitable interest. At the time of the agreement, [the defendant] had been an attorney for over twenty-five years specializing in transactional real estate, business, and mortgage cases. Several exhibits and the testimony of [the defendant] establish that [the defendant] knew of the existence of mortgages on all three of the subject properties at the time of the agreement . . . . As a real estate attorney, [the defendant] had reason to know that Connecticut follows the title theory of mortgages and that, therefore, he did not have legal title to properties encumbered by mortgages. Thus, he could not convey a full legal interest in his share of the fair market value of the three properties. . . . Further, logically, [the plaintiff] would only want to pay the lesser of the two possible prices for the property. For all these reasons, [the defendant] had reason to know that [the plaintiff] believed that 'interest' referred to equitable interest and not to full legal interest.

"Accordingly, the court, following the Restatement, interprets the agreement in accordance with the meaning attached to it by [the plaintiff]. Therefore, for the purposes of the buyout provisions of the agreement, 'interest' shall mean equitable interest, or [the defendant's] share of the fair market value of the property minus the outstanding mortgage debt." (Citations omitted.) This appeal followed.[9]

On appeal, the defendant claims that the court erred in holding that the term "interest" meant "equitable interest" and, accordingly, that the buyout amount for the defendant's interests in the properties must include consideration of the existing mortgages. The defendant primarily contends that this holding was error because, in reaching this result, the court relied on the wrong section of the Restatement (Second) of Contracts and ignored crucial evidence that supported the defendant's interpretation of the buyout provisions. We are not persuaded.[10]

As a preliminary matter, we first address the applicable standard of review. The defendant maintains that, because the agreement "contains definitive contract language . . . the determination [of] what the parties intended by their contractual commitments is a question of law subject to plenary review." Conversely, the plaintiff argues that, because this court determined in *Reiner* that the language at issue is ambiguous, we should apply the clearly erroneous standard of review because a determination as to what the parties intended their agreement to mean is a fact driven inquiry. We agree with the plaintiff.

Although the interpretation of definitive, unambiguous contract language is a question of law subject to plenary review, in *Reiner*, we concluded "that the agreement is ambiguous with respect to the method of calcu-

lation of the buyout amounts because the intent of the parties is not clear and certain from the language of the agreement." *Reiner* v. *Reiner*, supra, 190 Conn. App. 283. "When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *David M. Somers & Associates*, *P.C.* v. *Busch*, 283 Conn. 396, 403, 927 A.2d 832 (2007); see also *DeLeo* v. *Equale & Cirone*, *LLP*, 202 Conn. App. 650, 659, 246 A.3d 988 ("[t]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous" (internal quotation marks omitted)), cert. denied, 336 Conn. 927, 247 A.3d 577 (2021). Accordingly, the defendant's claim is properly reviewed under the clearly erroneous standard of review.[11]

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *David M. Somers & Associates*, *P.C.* v. *Busch*, supra, 283 Conn. 403.

We now address the merits of the defendant's appeal. The defendant first claims that the court erred in holding that the buyout provisions require consideration of the existing mortgages because the court incorrectly relied on § 201 of the Restatement (Second) of Contracts when it instead should have relied on § 220 of the Restatement (Second) of Contracts. We are not persuaded.

Section 201 (2) provides in relevant part: "Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made . . . (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party." 2 Restatement (Second), Contracts § 201, p. 83 (1981). Section 220, on the other hand, provides: "(1) An agreement is interpreted in accordance with a relevant usage if each party knew or had reason to know of the usage and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage. (2) When the meaning attached by one party accorded

with a relevant usage and the other knew or had reason to know of the usage, the other is treated as having known or had reason to know the meaning attached by the first party." Id., § 220, p. 147.

According to the defendant, the court should have applied § 220 when interpreting the parties' agreement because what is at issue with regard to the agreement is the parties' *usage* of the word "interest." The defendant further contends that had the court applied § 220 in interpreting the parties' agreement, the court would have concluded that the defendant's interpretation of the term "interest" (as meaning legal interest, and not equitable interest) controlled. We conclude that § 220 has no application in the present case.

The interpretative guidance provided by § 220 does not broadly apply to any usage of a term. Instead, "usage," as used in § 220, specifically pertains to "usages" that are a "habitual or customary practice." 2 Restatement (Second), supra, § 219, p. 146. Further, such a "usage" exists only when "few or many people use a word or phrase to convey a standard meaning or several standard meanings and develop a common understanding of the meaning or meanings." Id., comment (b), p. 146. The defendant cannot claim that his interpretation of the term "interest" was based on a habitual or customary usage of the term or that the term has a standard meaning that is understood by a group of people. The defendant did not present any evidence of such a usage to the court and, instead, his testimony concerning the meaning of "interest" was based solely on his personal understanding of that term as used in the agreement. We further conclude, as we explained in *Reiner*, that the word "interest," as used in real estate transactions such as the ones at issue in this case, has no habitual or customary meaning that is shared among a group of people. See *Reiner* v. *Reiner*, supra, 190 Conn. App. 281–82. Thus, the court was correct in not relying on § 220 to resolve the underlying action.

We further conclude that the court correctly applied § 201 in resolving the underlying action. The interpretative guidance provided by § 201 applies in cases where the parties have attached different meanings to a term or provision of an agreement but one of the parties knew or had reason to know of the meaning attached to that term or provision by the other party. 2 Restatement (Second), supra, § 201, p. 83. In its memorandum of decision, the court found that the defendant had reason to know that the plaintiff believed that the term "interest" meant "equitable interest" and, thus, according to § 201, held that the plaintiff's interpretation of the buyout provisions should control. We conclude that the evidence in the record provides ample support for the court's determination that the defendant had reason to know of the plaintiff's interpretation of the term

"interest."

First, the evidence establishes that the defendant was aware of the mortgages on each of the three properties. The defendant testified at trial that he knew that 603 Farmington, 711 Farmington, and Canton Gateway all were encumbered by mortgages when the parties executed the agreement. Closing documents and e-mails related to the mortgages for each of those properties further demonstrate that the defendant knew about the mortgages. Second, the evidence also supports the court's conclusion that the defendant, as an attorney specializing in "transactional real estate, business and mortgage cases" for more than twenty-five years, "had reason to know that Connecticut follows the title theory of mortgages and that, therefore, he did not have legal title to properties encumbered by mortgages." The defendant testified that he was an accomplished transactional attorney who had decades of extensive experience and involvement with real estate and mortgage related transactions. Given this background, the trial court had a sufficient evidentiary basis to infer that the defendant knew that "Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property." (Internal quotation marks omitted.) *Mortgage Electric Registration Systems, Inc.* v. *White*, 278 Conn. 219, 231, 896 A.2d 797 (2006). Accordingly, it was reasonable for the court to infer that the defendant likely knew that because he, as a mortgagor, had only equitable title to the property, "he could not convey a full legal interest in his share of the fair market value of the three properties." See id.; see also *Reiner* v. *Reiner*, supra, 190 Conn. App. 281. Furthermore, it was reasonable for the court to infer that the plaintiff would want to pay the lesser of the two possible prices for the properties and, hence, the defendant "had reason to know that [the plaintiff] believed that 'interest' referred to equitable interest and not to full legal interest."

The defendant argues that the court's findings as to each party's understanding of "interest" were clearly erroneous because the court ignored parol evidence that showed that both parties understood that the value of the defendant's interests in the properties was to be calculated based on the fair market value of the properties and not on the amount of equity in the properties after considering mortgages. In particular, the defendant relies on exhibits 605 and 606. Exhibit 605 is a series of e-mails, which included a July 6, 2012 e-mail exchange between the defendant and Attorney Samuel Chester, who was assisting the plaintiff with the drafting and execution of the agreement. In that e-mail exchange, the defendant wrote that "[m]y biggest concern is mortgaging trust assets before my family is paid." Chester responded to this concern by writing:

"The buyout of the trust properties is determined by **value**, not equity. If [the plaintiff] refinances a trust property, how would that negatively affect your interest?" (Emphasis in original.) The plaintiff and Delales were copied on Chester's response to the defendant.

Exhibit 606 contains additional e-mails sent later on July 6, 2012, among the defendant, his attorney, Doug Evans, and Chester. In an e-mail to Evans, on which Chester was copied, the defendant wrote: "This is a set up. . . . Now they want no notice which would allow [the plaintiff] to encumber everything and avoid payout." In response, Chester wrote to the defendant and Evans: "[The defendant's] buyout is not based upon equity, but upon fair market value of the properties. This is no 'set up.'" All of the e-mails in exhibits 605 and 606 on which the defendant relies were exchanged one day after the agreement was executed.

The defendant argues that these e-mail exchanges show that the parties, in particular the plaintiff, understood that the buyout amount would be calculated based on the fair market values of the properties and not on the amount of equity in those properties when the buyout occurred. He argues that the court's conclusion to the contrary was clearly erroneous. We are not persuaded. The record reflects that the court considered exhibits 605 and 606 but chose not to ascribe the weight to them that the defendant contends it should have.

The following additional facts and procedural history inform our analysis. While the present appeal was pending, on April 5, 2021, the defendant filed with this court a motion for permission to file a late motion for articulation with the trial court, which we granted. Thereafter, on May 14, 2021, the defendant filed with the trial court his motion for articulation, wherein he asked the court to "articulate whether it considered the defendant's exhibits 605 and 606 in forming its decision . . . ." On June 1, 2021, the trial court granted the defendant's motion for articulation, stating: "The court did consider exhibits 605 and 606. However, the court did not attach any weight to the statements contained in these exhibits."

It is for the trial court to decide what weight to give the evidence presented to it. See *Vaiuso* v. *Vaiuso*, 2 Conn. App. 141, 146, 477 A.2d 678 ("[t]he weight given to the evidence before it . . . [is] within the sole province of the trial court"), cert. denied, 194 Conn. 807, 482 A.2d 712 (1984). Furthermore, the court's decision to give no weight to those two exhibits was reasonable given the other evidence it heard. Delales, who negotiated the agreement on behalf of the plaintiff, testified that the e-mails in exhibits 605 and 606 were sent after the agreement had been negotiated. Delales also testified that Chester had not been involved in any of the negotiations concerning the agreement or in any con-

versations about what "interest" meant. Further, according to Delales, Chester was not even aware that the properties were encumbered by mortgages when he sent the two e-mails in question. Finally, neither the plaintiff nor Chester was questioned about Chester's e-mail in exhibit 606 on which the plaintiff was copied. Consequently, there was no evidence that the plaintiff read the e-mail, discussed it with Chester, or agreed with Chester's statement regarding how the buyout amount would be calculated.[12] On the basis of the totality of the evidence, the court's conclusion that exhibits 605 and 606 did not credibly show that the plaintiff knew or had reason to know of the defendant's interpretation of the term "interest" was not clearly erroneous.

We also are unpersuaded by the defendant's claim that the court's conclusion as to the proper interpretation of "interest" is incorrect because it conflicts with the plain language of the agreement. More specifically, the defendant argues that the lack of any references to equity or mortgages in the agreement's buyout provisions should have been dispositive on the question of whether those provisions included consideration of the existing mortgages. This is essentially the same argument we rejected in *Reiner*. In *Reiner*, this court concluded that the parties' agreement was ambiguous as to whether the buyout amount for the defendant's interests included the mortgages on the properties. *Reiner* v. *Reiner*, supra, 190 Conn. App. 283–84. That conclusion was binding on the trial court in all subsequent proceedings. See *Marshall* v. *Marshall*, 200 Conn. App. 688, 707–708, 241 A.3d 189 (2020) ("[i]t is a well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court" (internal quotation marks omitted)). Moreover, when a contract is ambiguous, the trial court is required to determine the intent of the parties and is permitted to rely on extrinsic evidence in doing so. See *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 858–59, 231 A.3d 182 (2020). Therefore, the court properly considered evidence beyond the language of the agreement when making its factual findings regarding the intent of the parties.

For the same reasons, we reject the defendant's argument that the court erred because it failed to consider the entire language of the agreement. According to the defendant, had the court considered the entirety of the agreement, it would have found additional language that supported the defendant's interpretation of the buyout provisions. This is yet another species of the defendant's argument that the agreement, as a whole, is clear and unambiguous on its face. Again, we reached a contrary conclusion in *Reiner* and did so after considering the entire language of the agreement. See *Reiner* v. *Reiner*, supra, 190 Conn. App. 282 n.12. The trial court

recognized that it was bound by that conclusion and properly turned to parol evidence to determine the parties' intent. This evidence included the testimony of the parties from which the court found that "each party had a consistent and sincere belief that the agreement embodied his interpretation of the word 'interest.'" Given the evidence before it, the court's finding was not clearly erroneous. Furthermore, because we had determined that the language of the agreement is ambiguous, and given the court's finding that the parties had very different yet sincere views as to what they agreed to, the court employed a reasonable and logical approach to resolve their dispute. We find no error in that approach or in the factual findings on which the court relied.

Finally, we reject the defendant's claim that equity requires that the mortgage encumbering 603 Farmington not be included in the calculation of the buyout amount for that property because that mortgage was taken out solely to fund security deposits on the property that had not previously been funded due to mismanagement by the plaintiff.

We first note that this claim is inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022). The defendant's argument in support of this claim is both short and conclusory. Further, the defendant provides almost no meaningful analysis in support of the claim and does not provide a single citation to any applicable legal authority. Accordingly, the claim is inadequately briefed. See id., 630–31 (claims were inadequately briefed when party provided "no meaningful analysis," "almost no citation to applicable legal authorities," and briefing was conclusory).

Moreover, even assuming that the defendant had properly briefed this claim, we still would conclude that the court did not err in finding that the mortgage on 603 Farmington is included in calculating the buyout amount for that property. As the plaintiff points out, the present case did not involve a determination of equity or any equitable adjustments. Instead, the case solely involved the interpretation of a contract, and

there is no evidence that the parties intended to treat the mortgage on 603 Farmington any differently from the mortgages on the other properties. Therefore, the court did not err in treating 603 Farmington the same way as the other properties for the purpose of calculating the buyout amount.

In sum, for all of the foregoing reasons, we conclude that the court properly determined that the buyout amount for the defendant's interests in the properties is calculated by multiplying his percentage interest in each property by the difference of the property's fair market value minus any outstanding mortgage debt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Jeffrey A. Reiner, Trustee, and JAR Partners, LLC, also were named as plaintiffs in this action. For clarity, we refer to Jeffrey A. Reiner as the plaintiff. Additionally, the following defendants were named in this action: Michael D. Reiner, as trustee of the Sheila Reiner Trust; Sheila Reiner, individually; Sheila Reiner, as trustee of the Michael D. Reiner Trust; Sarah L. Reiner; Jacob A. Reiner; Rhino Real Estate Investors, LLC; and Connecticut LLC Irrevocable Trust. Again, for the sake of clarity, we refer to Michael D. Reiner as the defendant.

[2] "A hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811–12, is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 499 n.5, 4 A.3d 288 (2010).

[3] Our conclusion in *Reiner* was different from the trial court's conclusion because the trial court denied the plaintiff's motion to enforce on the basis of the court's finding that the agreement was clear and unambiguous and that it was the defendant's interpretation, and not the plaintiff's, that controlled. *Reiner* v. *Reiner*, supra, 190 Conn. App. 275–76.

[4] "Nancy Brooks, the sister of the plaintiff and the defendant, was the third primary beneficiary of the trusts." *Reiner* v. *Reiner*, supra, 190 Conn. App. 271 n.6.

[5] In the four and one-half years between the execution of the agreement and the litigation underlying the prior appeal, the parties engaged in extensive litigation concerning property that Eleanore Reiner owned in Florida and other collateral issues stemming from the execution of the agreement. *Reiner* v. *Reiner*, supra, 190 Conn. App. 273. None of those issues was the subject of the previous appeal, and those issues are not implicated in the present case.

[6] "For instance, if the parties equally shared a property that had a fair market value of $1 million and that was encumbered by $900,000 of underlying debt, the buyout amount, pursuant to the [defendant's] construction, would be $500,000. As a result, the [plaintiff] would be obligated to pay the [defendant] five times the amount of the actual equity in the property." *Reiner* v. *Reiner*, supra, 190 Conn. App. 275 n.9.

[7] The proceedings in *Rhino Real Estate I* and *Rhino Real Estate II* are not at issue in the present appeal.

[8] On June 28, 2019, while the plaintiff's complaint was pending, the defendant filed a motion seeking "an order directing [the plaintiff] to immediately pay the *undisputed* portion of the outstanding amount due and owing to [the defendant] under the parties' settlement agreement . . . plus attorney's fees and other money damages . . . ." (Emphasis in original.) On July 8, 2019, the plaintiff filed an objection to the defendant's motion, claiming that the motion was "baseless and violative of the Appellate Court's decision, which found ambiguity in the settlement [agreement] between the parties. Until such time as a court adjudicates the ambiguity and determines the amount to be paid to [the defendant], [the defendant's] 'interests' cannot be transferred to [the plaintiff], and [the plaintiff] is not obligated to pay until there is a determination." At the time of the present appeal, the court had not yet ruled on the defendant's motion for orders.

[9] While the present appeal was pending, the plaintiff moved to terminate the appellate stay that arose under Practice Book § 61-11 (a). The trial court

denied the motion after finding that "there can be no real proceedings to enforce or carry out the judgment because the court rendered only a declaratory judgment . . . . The court did not order anyone to do, or prohibit anyone from doing, anything at all. Because there is no effective automatic stay, the court cannot terminate the automatic stay . . . ." The plaintiff did not seek further review from this court of the denial of his motion.

[10] When this appeal was filed on November 13, 2020, the court had rendered judgment only on the third count of the plaintiff's complaint, and counts one and two remained pending. Because counts one and two had yet to be adjudicated, there was a question of law as to whether the defendant had appealed from a final judgment. Accordingly, on March 24, 2021, we ordered the trial court to file an articulation "addressing whether it rendered judgment on the remaining two counts of the complaint and, if not, stating the status of counts one and two of the complaint." Also on March 24, 2021, the plaintiff withdrew the remaining two counts of his complaint. On March 30, 2021, the trial court filed its articulation of decision, wherein it stated: "At the time of the court's October 30, 2020 decision, the court [had] entered judgment only on count three and did not enter judgment on counts one and two. However, on March 24, 2021, the [plaintiff] filed a withdrawal of counts one and two. . . . Therefore, at the present time, the court has entered judgment on all existing counts of the complaint." (Citation omitted.) Thereafter, we ordered the parties to "be prepared to address whether the defendant . . . appealed from a final judgment given that the plaintiff . . . did not withdraw the first and second counts of the complaint until after the defendant filed this appeal." At oral argument before this court, both parties asserted that the defendant's appeal had properly been taken from a final judgment. We agree and conclude that, on the basis of the unique procedural posture of this case, the defendant has appealed from a final judgment. See *Zamstein* v. *Marvasti*, 240 Conn. 549, 556–57, 692 A.2d 781 (1997) (plaintiff properly appealed from final judgment, even though appeal was originally filed while two counts remained pending before trial court, because pending counts were later withdrawn after appeal was filed). On the basis of the particular circumstances of this case, to conclude otherwise "would unduly elevate form over substance . . . ." Id., 557.

[11] To the extent that the defendant claims that plenary review should apply because the court made a legal error when it relied on the wrong section of the Restatement (Second) of Contracts, we note that the Restatement is not the law and is instead simply a tool for interpreting contracts. See *Frank* v. *Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 885 (Mo. 1985) ("restatements are not law") (Blackmar, J., concurring). Accordingly, the court's reliance on the Restatement does not require us to conclude that plenary review is the applicable standard of review.

[12] At oral argument before this court, the defendant argued that, because the plaintiff was copied on the e-mails in exhibits 605 and 606 but never corrected Chester's belief that the buyout amount for the properties was "determined by **value**, not equity," the plaintiff must have agreed with that interpretation of the term. (Emphasis in original.) We disagree because the trial court did not reach such a conclusion, and for us to so conclude, especially without having heard all of the evidence that the trial court did, would require us to speculate, which we cannot do. See *In re Selena O.*, 104 Conn. App. 635, 644–45, 934 A.2d 860 (2007) (conclusions that rest on speculation are erroneous).

———————————